(No. 13017.—Reversed and remanded.)

PETER M. BIWER, Appellee, vs. GLENN MARTIN et al. Appellants.

*Opinion filed October 23, 1920.*

1. DEEDS—*when all the remainders are contingent.* Where a grantor, after reserving a life estate in himself, conveys a life estate to his son with remainder to his son's widow (who is not named) for life, and the remainder in fee after her death to the surviving lineal descendants of the son, or, in default of such descendants, to such lineal descendants of the grantor as the son may appoint by deed or will, or, in default of appointment, to vest in all of the lineal descendants of the grantor, all of the remainders are dependent upon uncertain events and are contingent.

2. SAME—*when heirs of grantor do not take remainder by deed.* Where a grantor conveys a life estate with remainder over, either mediately or immediately, to his heirs or the heirs of his body, the word "heirs" is regarded as defining or limiting the estate, and the heirs of the grantor do not take a remainder by the deed but there is a reversion by operation of law in the grantor and his heirs.

3. SAME—*power to appoint remainder may be extinguished by deed.* Where a grantor has conveyed a life estate to his son, with a power to appoint the remainder upon the failure of certain conditions specified in the deed, the son may by warranty deed extinguish the power of appointment.

4. SAME—*equity will not decree destruction of contingent interests except where clearly required.* The rule that a merger of the particular estate and the reversion in fee will destroy contingent remainders is enforced only where the facts bring the case clearly within the common law rule, and the application of that rule does not contravene other settled law.

5. SAME—*covenants of warranty are binding on one who acquires grantor's interest.* Covenants of warranty binding upon a grantor are likewise binding on one who stands in his place.

6. SAME—*grantor, by covenants of warranty, is bound to defend title of his grantee.* Covenants of warranty are synonymous with covenants for quiet enjoyment of the estate granted and no only bar the grantor from ever claiming the estate granted but require him to defend it when assailed by a paramount title; and such covenants are obligatory upon the grantor, his heirs and personal representatives, whether the deed conveys a present or future interest.

7. SAME—*after-acquired interest of the grantor passes to his grantee by way of estoppel.* Where one having no interest or only a part interest in land at the time he undertakes to convey the property afterwards acquires title, the interest he acquires passes to the grantee by way of estoppel, and if there be a warranty in his deed it not only estops the grantor but also a subsequent purchaser from him.

8. SAME—*what is basis of rule of estoppel by deed.* The rule of estoppel by deed is based upon the broad, equitable ground that the grantor having stated a certain thing as true is estopped to deny it at any time thereafter.

9. SAME—*when contingent remainders created by warranty deed cannot be destroyed—estoppel.* Where a grantor by warranty deed conveys a life estate to his son with certain contingent remainders in fee, one who subsequently acquires the grantor's reversionary interest by a sheriff's deed cannot destroy the contingent remainders by conveying his interest to another who has acquired the life estate, as the grantor's warranty of title is binding on one who subsequently acquires his interest and will estop him from destroying the interest of the contingent remainder-men.

DUNN and DUNCAN, JJ., dissenting.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

C. EVERETT SMITH, guardian *ad litem,* for appellants.

COVEY & WOODS, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This case is brought to this court by appeal from the circuit court of Logan county, in which a decree was entered for partition of certain land described in the bill of complaint.

John B. Martin, being seized in fee of the land in question, on the 26th day of April, 1912, by warranty deed, after reserving an estate to himself for life, conveyed said land to his son Zachariah Martin. The deed conveyed this property for the period of the natural life of Zachariah and the remainder to his widow, if she survived him, for the period of her natural life, and the remainder after the death

of said widow to the lineal descendants of Zachariah surviving him, *per stirpes,* in fee. It further provided that "if said Zachariah Martin leave no lineal descendants or descendant him surviving, then the remainder in said real estate shall vest, subject to said life estate of said widow, to such one or ones of lineal descendants of grantor as said Zachariah Martin may appoint by deed or will. In default of all lineal descendants of said Zachariah Martin him surviving and in default of appointment by him as aforesaid, said remainder after the death of said Zachariah Martin, subject to said life estate in said widow, shall vest in all the lineal descendants of grantor, *per stirpes,* in fee." The deed provided that the grantee, Zachariah Martin, take possession and pay a yearly rent. Upon execution and delivery of this deed Zachariah went into possession of said land, paid the rental to John B. Martin and the taxes each year, as therein provided, until the happening of certain events hereinafter enumerated.

Prior to the execution and delivery of the deed in question John B. Martin and his said son had signed certain judgment notes for the payment of a large sum of money. These notes were renewed from year to year for several years until default in their payment, whereupon the German-American National Bank of Lincoln, Illinois, took judgment in the circuit court of Logan county on a day subsequent to the execution and delivery of the deed in question. Execution was issued on the judgment and levy made by the sheriff of said county on all the right, title and interests of John B. and Zachariah Martin in and to the described land, and on sale of such interests under such execution the same were purchased by Fred W. Longan. No redemption was had from the sale of the estate of Zachariah Martin, and the sheriff issued a deed conveying the interest of said Martin in and to the real estate to Longan, except land set apart by commissioners as a homestead for Martin. After the expiration of twelve months from the

date of the sale Fred Reinhardt, a judgment creditor, redeemed the interest of John B. Martin, which interest was again sold on execution and purchased by Reinhardt and a certificate of purchase issued to him. There was no redemption from this sale. The complainant, Peter M. Biwer, by *mesne* indorsements and assignments of the certificates became the owner and holder thereof, and upon presentation of the same to the sheriff a deed was issued to him conveying the estate of John B. Martin. On December 16, 1918, the complainant conveyed to Longan all of the estate for the life of John B. Martin which he had in and to said real estate, and the right, title and interest in and to any rentals that were reserved by Martin in the deed to Zachariah Martin, in which deed it was stated that it was not the intent thereby to convey any part of the reversion in fee; that it was the intention of the parties that if Longan ever acquired the reversion in fee in and to the premises, in such event the particular estate for life owned by the grantee should merge in the reversion in fee and all contingent and future interests extinguished. On December 17, 1918, appellee gave another deed to Longan, which recited that it conveyed all reversion in fee to said lands with like provisions as to merger and extinguishment. On December 18, 1918, Zachariah Martin and Blanche Martin, his wife, by warranty deed conveyed to Longan the homestead set off by the commissioners at the sheriff's sale, in which deed it was recited that it was the intention of the parties that if the estates conveyed met with a reversion in the hands of the grantee the same should merge and be prematurely destroyed and all contingent and future interests extinguished. On the same day said Martin and his wife by quit-claim deed conveyed to Longan all their right, title and interest in the land described in the deed from John B. Martin to Zachariah Martin, with like recitals as to merger and destruction of remainders. On the same day said Longan and his wife re-conveyed said premises to Zachariah Martin by

quit-claim deed, and thereafter on the same date said Martin and his wife by warranty deed conveyed said premises to Longan, in which deed they recited that they released and extinguished any power of appointment or disposition held by Martin over the land, and they further covenanted and agreed that Martin would never do anything to injure, detract from or affect the fee simple estate therein granted. Longan and his wife by their deed of date of December 19, 1918, conveyed to the complainant an undivided one-fifth interest in the land in question.

The chancellor found that by virtue of the sales and the exchange of the various deeds in question the various interests merged, and that the complainant, Peter M. Biwer, was vested with the fee to an undivided one-fifth of the land and defendant Fred W. Longan was vested with the fee to an undivided four-fifths, and decreed partition thereof, from which decree this appeal is now pending.

It is contended by appellants, who are the minor children of Zachariah Martin and the grandchildren of John B. Martin, that the transactions in question do not constitute a merger, and that their interests under the deed of John B. Martin to Zachariah Martin are vested and not contingent. It is contended by the appellee that the interests of these minor children at the time of the transactions in question were contingent, and that there was a merger and a destruction of such contingent remainders.

In the John B. Martin deed the widow of Zachariah was not referred to by name, and the remainder to said widow was dependent upon Zachariah being survived by a widow and who such widow would be. It was therefore a contingent remainder. The remainders over to the lineal descendants of Zachariah depended upon such descendants surviving him and were therefore contingent remainders. (*Spatz* v. *Paulus*, 285 Ill. 82; *Kamerer* v. *Kamerer*, 281 id. 587; *Smith* v. *Chester*, 272 id. 428; *Kleinhans* v. *Kleinhans*, 253 id. 620; *City of Peoria* v. *Darst*, 101 id. 609.)

The deed also provided that in default of appointment by him, the fee to the property should vest in all lineal descendants of the grantor, *per stirpes,* in fee, subject to the life estate of the widow.

Under the rule at common law, where a grantor in a deed conveys a life estate with remainder over, either mediately or immediately, to his heirs or the heirs of his body, the heirs do not take a remainder at all but the word "heirs" is regarded as defining or limiting the estate which the first taker has. In such case the lineal heirs or heirs of the body of the grantor take not a remainder but a. reversion, and such reversion by descent from the grantor and not by the deed. The grantor first in point of time in case of such conveyance has the reversion in the property by operation of law. (2 Washburn on Real Prop. 242, 395; *Akers* v. *Clark,* 184 Ill. 136.) Under the deed of John B. Martin, therefore, the reversion of said lands by operation of law vested in Martin. Appellee, Biwer, succeeded to such reversion through a sheriff's deed on execution sale. By his deed of December 18, 1918, to Longan, Zachariah Martin extinguished the power of appointment given him in the deed of John B. Martin. *(Baker* v. *Wilmert,* 288 Ill. 434.) Such power of appointment, therefore, does not enter further into the questions presented here.

It is contended by the appellee that as the reversion of the lands remained in the grantor, John B. Martin, and as appellee succeeded to Martin's title his deed of December 17, 1918, conveyed the reversion and merged it with the life estate and destroyed the contingent remainder, thereby giving Longan the fee to said lands, one-fifth interest in which he later re-conveyed to appellee. This is an evident attempt to destroy the contingent interest of the children of Zachariah conveyed and warranted to them by the deed of John B. Martin and by him intended to be vested in them if they survive their father. The rule of law which appellee seeks to take advantage of here has grown out of the

theory that a contingent remainder must depend upon a particular estate of freehold for its existence. Therefore, where the tenant of this particular estate of freehold tortiously terminates it by merging it with the reversion in fee the contingent remainder is destroyed, regardless of the intention of the grantor in executing the deed conveying such contingent remainder, and regardless of the fact, in certain cases, that such contingent remainder-men are *in esse* and the only contingency preventing the immediate vesting of the estate granted them is that they survive the life tenant. It is a rule of law that should never be applied unless its application is demanded by reason of the facts coming squarely within it. Courts of equity will not lend their aid in doing an unjust thing. It is only where the facts bring the case within the common law rule and the application of that rule does not contravene other settled law that equity will apply that rule, where, as here, its application works injustice.

After the deed of John B. Martin the reversion was in him by operation of law and thereafter passed to complainant, and we have presented the case of a conveyance of the reversion to the holder of the life estate with the expressed intention in the deed of conveyance that the contingent remainders should be destroyed. It is contended that this was accomplished notwithstanding the fact that the original holder of the reversion, Martin, had created such contingent remainders by his deed, and by his covenants of warranty had warranted that when these remainders had, by the happening of the contingency specified, become vested, the holders thereof should have the quiet enjoyment of them. The deed by which it is sought to convey the reversion so as to destroy the remainders is the deed of Biwer to Longan of December 17, 1918. Biwer then owned the reversion of Martin. Whatever effect the covenants of warranty of Martin would have on his attempt to destroy the contingent remainders they would likewise have on Bi-

wer's attempt to do so.   Covenants of warranty binding
upon a grantor are likewise binding on one who stands in
his place. (*Walton* v. *Follansbee*, 131 Ill. 147; Tiedeman
on Real Prop. sec. 728; Coke's Litt. 384*b;* Rawle on Cove-
nants,—4th ed.—459.) The question therefore arises, what
is the effect of the covenants of warranty of John B. Mar-
tin in the original deed on this attempt to destroy the con-
tingent remainders created by that deed?

The law in relation to covenants of warranty finds its
basis in feudal warranty prior to the seventeenth century in
England.   By the feudal constitution homage and warranty
were reciprocal.   Even before the introduction of deeds it
was the law that while the vassal should render homage to
his lord for the fief received at his hands the lord should
protect the vassal in its enjoyment, and if his title were dis-
puted and the lord failed to insure it when called upon to do
so, whereby the fief was lost, he was bound to furnish an-
other of equal value.   This warranty was originally created
without express contract of any kind but was simply a nat-
ural incident of tenure.   The effect of it was not only to
protect the vassal from the paramount title of others, but
it likewise protected him from any attempt on the part of
his lord to take back what he had parted with.   In other
words, the warranty operated as a "rebutter," as it was
termed, by barring the warrantor from claiming any of the
portions of the land.   When the practice arose of trans-
ferring lands by charter or deeds, a warranty was implied
from the words of feoffment and was termed a warranty
at law.   (Coke's Litt. 384*a*.)   The passage of the statute
Quia Emptores in 1290 (18 Edward I, chap. 1,) put an end
to homage as an incident of tenure, and thus took away the
incident upon which warranty depended and express war-
ranty became almost universally used.   (Rawle on Cove-
nants for Title,—4th ed.—5.)

Covenants of warranty in this State are treated as syn-
onymous with covenants for quiet enjoyment of the estate

granted, (*Bostwick* v. *Williams,* 36 Ill. 65; *Athens* v. *Nale,* 25 id. 178;) and constitute an engagement or covenant that the covenantor and his heirs should be barred from ever claiming the estate and that he and they should undertake to defend it when assailed by a paramount title. (*Bostwick* v. *Williams, supra.*) Under the rule in this State, and generally in this country, in cases of suit brought upon a paramount claim against one who is entitled to the benefit of any covenant of warranty, the latter can, by giving notice of the action to the party bound by the covenant, require him to defend such action, and the covenantor, in the absence of fraud or collusion, is not allowed, where his covenantee brings an action on the covenant against him, to prove that the recovery against the covenantee was not had under paramount title. (*Swenk* v. *Stout,* 2 Yates, 470; *Hines* v. *Allen,* 34 Conn. 195; *Hamilton* v. *Cutts,* 4 Mass. 353; *Cooper* v. *Watson,* 10 Wend. 205; *King* v. *Kerr,* 5 Ohio, 158; and see cases cited in 2 Am. Lead. Cas.— 5th ed.—419.) It is likewise the rule in this State that where one who has no interest, or but a part thereof, in the land he undertakes to convey, and afterwards acquires title, the interest he acquires passes to the grantee by way of estoppel, and if there be a warranty, it not only estops the grantor but a subsequent purchaser from him. *Frisby* v. *Ballance,* 2 Gilm. 141; 4 Kent's Com. *98; *Phelps* v. *Kellogg,* 15 Ill. 131; *Bennett* v. *Waller,* 23 id. 97; *Walton* v. *Follansbee, supra; Williams* v. *Esten,* 179 Ill. 267; Tiedeman on Real Prop. sec. 728.

A covenant of warranty is treated, under the rule in this State, as synonymous with quiet enjoyment and runs with the land, (*Bostwick* v. *Williams, supra,*) and there is a breach of such covenant for quiet enjoyment where the covenantee becomes disseized by reason of a paramount title and a claim thereunder. (*Moore* v. *Vail,* 17 Ill. 185.) And this is true though such paramount title came into existence

without affirmative act on the part of the grantor or his heirs or assigns.

It will be seen from the foregoing rules that covenants of warranty of a grantor place upon him and his success-ors in title the burden of protecting his covenantee in the estate granted, and the question arises here whether the grantor should in equity and good conscience be allowed to destroy by conveyance a right he has created by deed with covenants of warranty. We think not. If it is sound doctrine,—and we believe it is,—to say that where the grantor conveys an estate he does not own, such estate is to pass under his covenants by way of estoppel when acquired by him, we can see no reason why such grantor should not be estopped to breach his covenants of warranty by an act of conveyance, which would have the effect of defeating the remainder granted by him. The rule of estoppel by deed is based upon the broad, equitable ground that the grantor having stated a certain thing as the truth is estopped to deny it at any time thereafter. It clearly appears that all of the equitable reasoning and rules applicable to cases of estoppel by deed should apply in a case of this character. It is settled in this State that a grantor in a deed is not allowed to attack a title the validity of which he has covenanted to maintain. By such a deed the grantor warrants to the grantee, his heirs and assigns, the possession of the premises and that he will defend the title granted by the terms of the deed against persons who may lawfully claim the same, and that such covenant shall be obligatory upon the grantor, his heirs, personal representatives and assigns. This is true whether the deed conveys a present or future interest. (*Smith* v. *Carroll*, 286 Ill. 137; *Walton* v. *Follansbee, supra.*) Since the grantor and his heirs and assigns are not permitted to deny the title which the grantor by his deed conveys but must defend the same, it would seem by all equitable principles that he or they should not

2&4 – '32

be allowed to breach by his or their act the covenants of warranty contained in such deed.

Counsel for appellee urge that the rule is well settled that in all cases where the life interest and the reversion meet in the same person intervening contingent remainders are destroyed. While the common law rule of merger prevails in this State, and is that when an estate for life and the next vested estate in remainder or reversion meet in the same person, notwithstanding intervening contingent remainders, the particular estate will merge in the reversion or remainder and contingent remainders will be destroyed, yet this rule is not without qualification, as where the creation of a particular estate and the remainder or the reversion occur at the same time and by the same instrument, or where the particular estate is devised by will and the life tenant takes the vested remainder or reversion by descent at the same time that he takes under the will. (*Gray* v. *Shinn,* 293 Ill. 573; *Kellett* v. *Shepard,* 139 id. 433.) Neither these cases nor any called to our attention present the situation where, as here, the grantor holds the reversion and by his deed enters into covenants of warranty as to the rights and interests granted by his deed. Here the grantor of the reversion was bound by the covenants of warranty of the original grantor, John B. Martin. Such covenants of warranty and the rule relating to their binding effect upon the grantor of the reversion constitute another exception to or qualification of the general common law rule in relation to the destruction of contingent remainders. In *Gray* v. *Shinn, supra,* the reversion was created by William H. Gray by will. When his grandson, William Allen Gray, by his two deeds conveyed his life interest and the reversion to his mother he was under no covenant of warranty, and there was therefore no intervening rule of law which prevented the operation of the common law rule with reference to the destruction of contingent remainders. Such is not the case here. Biwer, as

the grantee of the reversion, took the same with the covenants which rested upon the original grantor, Martin, and to hold that his deed would destroy the contingent remainders would be to permit him to avoid the covenants of warranty of his grantor.

Counsel also contend that this court has adopted the rule that where contingent remainders are created by statutory warranty deed they are nevertheless destructible by the act of the grantor, who holds the reversion, in conveying the property to the party holding the life estate, upon which the contingent remainders are vested, and they cite in support thereof *Stoller* v. *Doyle*, 257 Ill. 369. In that case Lawrence Doyle and his wife executed a deed to Frank Doyle creating a future interest therein, and later the same grantors executed a second deed of the same premises to the same grantee, omitting the restrictions and conditions and containing a statement that it was made for the purpose of removing the restrictions in the former deed and was meant to give the grantee an absolute title to the premises. It was there held that under sections 9 and 13 of the Conveyance act the first deed was a fee simple except as limited by the deed; that it was subject to a conditional limitation which might terminate it, but unless the contingent events took place it would last forever, and that there was not created a contingent remainder. It will therefore be seen that *Stoller* v. *Doyle* is not authority for the proposition that the grantor shall be allowed to destroy the contingent remainders created by him.

Counsel also cite *Hill* v. *Hill*, 264 Ill. 219. In that case it was urged that the life tenant, Mary J. Hill, having conveyed her interest to John Niccolls and William H. Hodge, and the original grantor having agreed by his bond to transfer the reversion to Niccolls, the contingent remainders created in the children of Mary J. Hill by the deed of Hodge were destroyed. That case does not hold that such a deed on the part of Hodge to Niccolls would de-

stroy the contingent remainders, and the question whether
or not he would in equity be allowed to destroy the con-
tingent remainders by making such a deed was not decided
in that case. Hodge did not make the deed in question,
and the court merely held that his giving bond to do so
was not equivalent to making such a deed.

The case of *Bond* v. *Moore,* 236 Ill. 576, also cited by
appellee as authority for his contention that the contingent
remainders were destroyed in this case, was a case arising
under a will, and therefore the effect of covenants of war-
ranty did not there arise.

It is contended by appellee that the remainder to the
children of Zachariah Martin being contingent, it was not
such an interest as was affected by the covenants of war-
ranty. It is the general rule that covenants of warranty
extend to the right or interest granted, whatever that might
be. (*Corbin* v. *Healy,* 20 Pick. 514.) It was said by Lord
Hardwicke in *Mann* v. *Ward,* 2 Atk. 226, that "when a
man has granted and conveyed, be it a right real or pre-
tended, the very words 'grant' and 'convey' imply a war-
ranty for quiet enjoyment." While by the statute Quia
Emptores and by the use of charters and deeds implied war-
ranties gave way to express warranties, and while the com-
mon law rule of implied warranties is not in existence in
this State unless where all the words of the statute are used,
(*Wheeler* v. *County of Wayne,* 132 Ill. 599,) express war-
ranties are given the same effect as implied warranties at
common law.

While it is true that under the rule in this State a con-
tingent remainder is not an estate that may be conveyed
voluntarily by deed except by way of release or estoppel,
yet it is a valuable right conveyed to the remainder-men
in the land conveyed by the grantor, and having made
this deed, by which the reversion is retained in him, he has,
in effect, covenanted that upon the happening of such con-
tingency the remainder-men, members of which class are

now *in esse* in this case, shall then have the quiet enjoy-
ment of such remainder. It is therefore inequitable that
he should be allowed to breach his covenants of warranty
merely because it happens that at the time such breach
is attempted the interest granted by him has not yet be-
come vested and those entitled thereto not yet fully deter-
mined. This view does not give rise to a conveyance of
such reversion by estoppel, as is thought, but the grantor,
who holds the reversion, is estopped by his covenants of
warranty to destroy the contingent interest which he has by
his deed created.

We are of the opinion that, under the circumstances of
this case, to apply the common law rule relating to the de-
struction of contingent remainders would be to contravene
the rule relating to covenants of warranty. The situation
here presented must be taken as affording a qualification of
the rule relating to the destruction of contingent remain-
ders. By reason of his covenants of warranty John B.
Martin would be estopped to carry out the destruction of
the contingent remainders created by him. The complain-
ant, who is the grantee of the reversionary interest of Mar-
tin, is bound by the covenants of Martin, and is, like him,
estopped to breach such covenants or attack the title war-
ranted by the grantor. His deed of December 17 to Lon-
gan, by which he attempted by conveyance of the reversion
to effect a destruction of all contingent and future inter-
ests, was an attack upon the title and a breach of the cove-
nants of his grantor, which neither he nor his grantor is
allowed to make. Martin being estopped to do any act
which would defeat the contingent remainders granted by
him, the complainant, as his grantee, is likewise estopped,
and the deed of the complainant to Longan therefore did
not operate to destroy the contingent remainders granted in
the Martin deed. Complainant's deed of December 16 to
Longan passed the right of Martin to rentals reserved by
his (Martin's) deed. Complainant's second deed to Lon-

gan operated to pass the reversionary interest of Martin subject to his covenants of warranty that if the issue of Zachariah survive him, Zachariah, they should take the fee. Martin's right to vest the reversion in fee in a grantee by conveyance is contingent on the death of Zachariah leaving no issue surviving him. If that contingency happens the reversionary interest ripens into a fee, and by the deed of Biwer to Longan the fee will have vested in the latter. (*Pinkney* v. *Weaver*, 216 Ill. 185.) Until this contingency happens Martin's reversionary interest held by Biwer can not be so conveyed as to defeat the rights of the contingent remainder-men. To apply this rule in this case is consonant with equity and justice and contravenes no settled rule of law. Longan by his re-conveyance to Biwer could not convey a title which he did not own. The effect of Longan's deed to Biwer was to pass to Biwer an undivided one-fifth interest in the rentals reserved by the Martin deed, also a one-fifth interest in the life estate of Zachariah, and in the reversion subject to the contingency named.

The chancellor therefore erred in holding that the conveyance herein referred to destroyed the contingent remainders granted by the John B. Martin deed and in holding that the complainant, Peter M. Biwer, was vested with a fee to an undivided one-fifth of said lands and that Frederick Longan was vested with the fee to an undivided four-fifths thereof and in decreeing accordingly. For this error the decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

DUNN and DUNCAN, JJ., dissenting.