Williams, J.
 

 The first question is whether the Court of Appeals erred in overruling the motion to dismiss the appeal.
 

 Section 12223-7, G-eneral Code, contains the following: “The period of time after the entry of the order, judgment, decree, or other matter for review within which the appeal shall be perfected, unless otherwise provided by law, is as follows:
 

 “1. In appeals to the Supreme Court, to Courts of Appeals, or from Municipal Courts and from Probate Courts to Courts of Common Pleas, within twenty (20) days.
 

 “Provided, that, when a motion for a new trial is duly filed by either party within three days after the verdict or decision then the time of perfecting the appeal shall not begin to run until the entry of the order overruling or sustaining the motion for new trial. * * *”
 

 Without determining whether a party may perfect his appeal within twenty days after the overruling of the motion for a new trial in a chancery case if he elects to wait (see
 
 ante,
 
 479), this court holds that an aggrieved party may file an appeal on questions of law and fact within twenty days after the journal entry of the final judgment is filed in the trial court notwithstanding the fact that a motion for new trial is still pending and undisposed of. Under such circumstances the party appealing on questions of law and fact waives his motion for a new trial for the purpose of the appeal. The Court of Appeals did not err in overruling the motion to dismiss the appeal.
 

 The second question is: What are the rights of the parties under the sublease from Frankel to Liberal?
 

 The head lease to Frankel gave it as lessee the right to purchase the premises on or before the date of the
 
 *497
 
 expiration of the term, on September 10, 1938. At that time the sublease from Frankel to Liberal which expired December 31, 1948, had slightly over ten years to run. There was a covenant in the sublease that Frankel would exercise its privilege and purchase the fee on or before September 10, 1938, and a provision that the sublessee might exercise the privilege if the sublessor failed to do so. Frankel did not purchase the premises as stipulated in the covenant but instead (Liberal not having exercised the privilege either) by agreement obtained before the expiration of the head lease an extension of the term for three years. During the extended term Frankel transferred its interest to the nominee, Rendigs, by warranty deed. There were covenants in the supplemental agreement and in the deed by which the owners of the fee (the Boss heirs) and Rendigs bound themselves to protect Liberal in the possession and quiet enjoyment of the premises demised to it under the terms of the sublease.
 

 It is a general rule that a lease will operate to pass an after-acquired title. The basis of the doctrine is estoppel and the rule operates both ways. The lessor is estopped by the demise of the leasehold interest with covenant for quiet enjoyment, express or implied.
 
 Poultney
 
 v.
 
 Emerson,
 
 117 Md., 655, 84 A., 53; 24 Ohio Jurisprudence, 853, Section 128. The lessee is estopped (at least in those instances in which he has had peaceful and quiet enjoyment of the demised premises from the beginning of the term) for the reason that, being in undisturbed possession, he is not permitted to deny his lessor’s title. 1 Washburn on Real Property (6 Ed.), 362, Section 623. See, also, 35 Corpus Juris, 1227, Section 566 (subject Subtenants). When Frankel, during the original term of the head lease secured an extension for the three-year period ending September 10, 1941, Liberal’s right and interests upon the sublease were affected accordingly. Consequently Liberal has a present estate for years under the sub
 
 *498
 
 lease, unless Frankel’s breach of the covenant to purchase by failing to exercise the privilege, as agreed upon, worked a change in the rights and obligations of sublessor and sublessee.
 

 Liberal maintains that Frankel’s failure to exercise its right to purchase terminated the sublease and released Liberal from the payment of rent in the amount stipulated in the sublease.
 

 Was the covenant to purchase an independent covenant? It was immaterial to Liberal who the owner of the fee might be as long as the covenant for quiet enjoyment was not broken. The absence of a stipulation that the contract between sublessor and sublessee would be at an end on sublessor’s breach of the covenant to purchase shows an intention to make that covenant independent. Since the dependency of covenants is a matter of the intention of the contracting parties the omission of the correlative stipulation is of controlling significance.
 

 What we have here, then, is the breach of an independent covenant — -a breach “not of such a material and substantial nature as to excuse the party suing from proceeding with the contract.”
 
 Barry
 
 v.
 
 Frankini,
 
 287 Mass., 196, 199, 191 N. E., 651, 93 A. L. R., 1240, 1242. In that case much was said that is apposite here. In fact what constitutes a turning point in the case at bar is put thus at page 201: “Covenants in leases, however, for reasons which need not be elaborated here, are generally independent, in the absence of clear indications to the contrary, and the lessee is relieved from performance of his covenants only by actual or constructive eviction.”
 

 Liberal, however, insists that the course pursued by Frankel amounted to an eviction. Actual eviction involves expulsion or exclusion from the demised premises ; constructive eviction, surrender of possession by the tenant on justifiable grounds. The distinction between the two kinds of eviction is accurately and fully
 
 *499
 
 explained in 2 Tiffany Landlord and Tenant, 1263, Section 185
 
 (d)
 
 from which we quote: “In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises. In case of an actual dispossession of the tenant, an ‘actual eviction,’ no question can arise in this regard, hut when there is merely an interference with his possession.and enjoyment, it .is necessary that the tenant relinquish possession of the premises in order that there he a ‘constructive eviction, ’ the theory being that the acts of interference by the landlord compel the tenant to leave, and that he is thus in effect dispossessed, though not forcibly deprived of possession. As has been remarked, ‘the proposition that there can he retention of demised premises and an eviction are logically and legally contradictory.’ ” So long as the tenant remains in possession he cannot successfully maintain that he has been constructively evicted.
 

 Liberal has never been evicted, actually or constructively. It is still in undisturbed possession. Even so, the covenant of purchase because independent could not as heretofore indicated he the basis of a construe-, tive eviction. What is more there has never been a time when Liberal, observing and performing its covenants, could have been lawfully evicted, and that time will not come during the life of the lease if the provisions and covenants of the supplemental extension agreement, the warrantry deed and the sublease are adhered to and carried out. The Boss heirs, Frankel and Rendigs, the nominee, have entered into contractual obligations which assure to Liberal posses-session and quiet enjoyment of the premises for the full term of twenty years. Liberal was and is fully protected as to its contract of sublease by three steps that were taken, namely, (1) the valid extension of the head lease for three years, (2) the execution of a supplemental agreement of extension by the terms of
 
 *500
 
 which the owner of the property, the Boss heirs, agreed further to protect (among others) the sublessee, Liberal, in the possession and quiet enjoyment of the premises demised to it, and (3) Rendigs’ acceptance of the warranty deed, in which he assumed and agreed to carry out the sublease to Liberal and covenanted to grant the latter quiet and peaceable possession thereunder.
 

 Liberal’s rights under the sublease would have been protected, it is true, if Frankel had performed its agreement to purchase the fee but Liberal can not complain since it received protection in another all-sufficient way.
 

 What Liberal seeks is a cancellation of the lease in equity while still in possession without having paid the rent. At the same time Liberal complains that Frankel, though receiving a reduction in the rental, has not offered a reduction to Liberal. The factor impelling Liberal’s desire to have the rent reduced was a decrease of rental generally in the immediate neighborhood amounting to approximately 50 per cent. Nevertheless equity does not relieve a party from a contract because it is burdensome or make a new contract for the parties. Failure to reduce the rent is not an element that can be considered in the instant case.
 

 The courts below held that after breach Liberal was a trespasser or at best a tenant at sufferance liable for the reasonable rental value for the period of its occupancy subsequent to September 10, 1938. If it is assumed
 
 arguendo
 
 that the sublease expired at that date by reason of the breach, the holding that Liberal could be liable only for the payment of reasonable rent during that period is not sound for the simple reason that in case of holding over upon termination of a lease the landlord may regard the occupant as a tenant and collect the rent stipulated in the lease under which the tenant holds over. On the theory that the sublease terminated at the end of the original term granted by
 
 *501
 
 the head lease Liberal would be liable for the rents stipulated in the sublease as long as it continued to hold possession of the premises. Since Frankel and then Rendigs, the nominee, owned the immedidate reversion under the sublease during the period of the holding over, each in turn would have a right to treat Liberal as a tenant at the same rental under the holding over principle. However, since we hold the view that the covenant to purchase the premises was not a dependent covenant, that failure to purchase was not ground for constructive eviction and that the leasehold did not end with the expiration of the original term under the head lease, the holding-over principle does not apply.
 

 In the light of what has been stated the rights and obligations of Liberal, as sublessee, stand out clearly. In return for possession and quiet enjoyment the sub-lessee is obligated to yield the stipulated rental as it falls due. To whom must payment be made?
 

 The right to rent follows a transfer of the reversion unless of course there is a reservation of rent.
 
 Smith
 
 v.
 
 Harrison,
 
 42 Ohio St., 180, 185; 36 Corpus Juris, 364, Section 1206, and cases cited. Moreover, under the modern rule attornment by the lessee is not essential to the validity of such transfer. See 16 Ruling Case Law, 922, Section 429. Of course Frankel is entitled to rentals that accrued while it retained its interest as lessee under the head lease. When Rendigs, the nominee, acquired from Frankel all of its right, Rendigs became entitled to the rent accruing after the transfer and the obligations of Liberal under its sublease including its obligation imposed by the covenant to pay rent were unaffected. The contract of sublease remains of full force in word and covenant.
 

 It does not follow that the sublessee has no right of action by reason of breach of the covenant to purchase. Action lies at law to recover therefor; but in the in
 
 *502
 
 stant case no actual damages have been suffered by the sublessee.
 

 Liberal relies on the case of
 
 New York Life Ins. Co.
 
 v.
 
 Simplex Products Corp.,
 
 135 Ohio St., 501, 21 N. E. (2d), 585. In that case the facts as shown in the syllabus and in the opinion were that two separate mortgages incumbered different portions of premises covered by one lease with rental payable to the lessor-mortgagor. The mortgages were foreclosed in the same action and each mortgagee purchased the portion of the premises covered by its mortgage. The tenant continued payment of the stipulated rent in monthly installments and the rental so paid was apportioned between the mortgagees according to an assigned agreement the owner had made with the mortgagees. The factual situation is so different in that case that it has no application to the case at bar.
 

 On the undisputed facts this court enters final judgment dismissing the petition and awarding to Frankel and to August A. Rendigs, Jr., recovery for accrued rental as hereinbefore indicated.
 

 Judgment reversed and final judgment entered.
 

 Weygandt, O. J., Zimmerman, Turner, Matthias and Hart, JJ., concur.