**GULF REFINING CO. v. FETSCHAN et al.**

**No. 9060.**

Circuit Court of Appeals, Sixth Circuit.

June 2, 1942.

Rehearing Denied Aug. 28, 1942.

suffered as a result of the noxious fumes emitted by the refinery, the discharge of waste, and the erection of levees around the lands upon which the refinery was situated, resulting in flood waters inundating the property leased by appellee.

Approximately nine miles north of its junction with the Ohio River, the Great Miami River makes a horseshoe bend. In the toe of this horseshoe is a tract of land leased by appellee in 1925 from Mr. and Mrs. Roessler, for a 20-year period, with a renewal privilege for a further term of 10 years. The lease contains the usual covenant of quiet enjoyment, as well as against molestation, specifying that the leased premises are to be used for camp purposes.

In 1930, the Gulf Refining Company purchased from the Roesslers, all of the property within the horseshoe, including the part theretofore leased to appellee, the purchase being made subject to this lease. Thereafter, appellant constructed a refinery across the heel of the horseshoe. There was a roadway, which approximately bisected the refinery, over which appellee had means of ingress and egress. Appellant built levees around each half of the refinery area (except where the natural terrain was higher than 496' above sea level). In January, 1937, there occurred a great flood of the Ohio and Miami Rivers. Appellee alleged that by reason of the levees erected by appellant, the flood waters of the Great Miami River were deflected over his leasehold estate with greater force and violence than would have been the case had the water naturally flooded the property; and that as a result, 15 cottages owned by appellee were washed from their foundations and destroyed. Appellee further claimed damages on the ground that the Gulf Refining Company had permitted noxious, foul and nauseating odors and fumes to escape from the refinery; and that loud and nerve-wracking noises had emanated therefrom—all of which resulted in the refusal of tenants to rent, and caused appellee and his family to leave the premises. The trial court submitted eight special questions to the jury, which answered only one of them, and returned a verdict in the amount of $7,908.-00 in favor of appellee.

On appeal, the Gulf Refining Company claims that the proofs show that the appellee was not the real party in interest in bringing the suit; that the trial court erred

Hugh McD. Ritchey and Joseph S. Graydon, both of Cincinnati, Ohio, H. Melvin Roberts, of Cleveland, Ohio, and David Proctor, Jr., of Pittsburgh, Pa. (William A. McKenzie, and Graydon, Lackner, Head & Ritchey, all of Cincinnati, Ohio, and Howell, Roberts & Duncan, of Cleveland, Ohio, on the brief), for appellant.

R. T. Dickerson, of Cincinnati, Ohio (Harold L. Browne, and Richard Remke, both of Cincinnati, Ohio, on the brief), for appellees.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This is a suit brought by Louis Fetschan, herein referred to as appellee, against the Gulf Refining Company for damages. The Cross Park Realty Company was joined as a nominal party defendant. Appellee had verdict, in the amount of $7,908.00, upon which judgment was entered, and the Gulf Refining Company appeals. The action grows out of the erection and operation, by appellant, of a refinery upon land adjoining that leased by appellee. The damages claimed are alleged to have been

in accepting the general verdict in spite of the jury's inability to answer the interrogatories; that there was no breach of covenant inasmuch as appellee was not actually or constructively evicted; that there was no evidence that the loss of appellee's cottages was caused by the erection of the levees; that appellee's recovery of damages in a prior suit was a bar to the present action; and that, because of the foregoing, the trial court should have directed a verdict on various issues of the case, and should have entered judgment on the rest of the issues in favor of appellant.

Three cases, brought by appellee, have been decided by the trial courts—the first, an action for damages alleged to have been suffered up to January, 1934, in which appellee had judgment in the amount of $1,000; the second, an injunction suit; and the third, the present controversy.

Appellant, in its contention that appellee was not the real party in interest, as required by Rule 17 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, offered in evidence two assignments of appellee's lease to the Cross Park Realty Company, and an agreement between the same parties, providing for payments to the company out of the proceeds of any sale of the leasehold. Appellant, by these exhibits, sought to show that appellee had parted with all of his interest in the premises. The trial court excluded this evidence on the ground that it had been previously determined, in another suit between the same parties, that the transactions in question had amounted to only a pledge of appellee's interest in the property, and that such determination was res adjudicata. Appellant, however, contends that appellee did not plead res adjudicata as an affirmative defense, as required by Rule 12 (h) of the Federal Rules of Civil Procedure. But it is not required that a plaintiff plead or reply to a defendant's answer, unless it contains a counterclaim, denominated as such. Rule 7 of the Federal Rules of Civil Procedure. See Moore's Federal Practice, Vol. 1, p. 421 et seq. It was unnecessary, therefore, for appellee to reply to appellant's answer by pleading res adjudicata. In passing, we have reviewed the determination of the Master Commissioner, to whom this question was referred upon the previous trial of the other case between the parties, and agree with his conclusion that appellee's transactions with the Cross Park Realty Company amounted to no more than a pledge of his interests in the premises. The District Court properly excluded the proffered evidence.

Appellant insists that under Ohio law there can be no breach of covenant for quiet enjoyment, unless the covenantee has been actually or constructively evicted; and that there can be no such eviction unless possession has been lost or abandoned, as "the proposition that there can be retention of demised premises and an eviction are logically and legally contradictory" (Liberal Savings & Loan Co. v. Frankel Realty Co., 137 Ohio St. 489, 30 N.E.2d 1012, 1017; Wetzel v. Richcreek, 53 Ohio St. 62, 40 N.E. 1004); and that the evidence discloses that, while appellee moved away from the premises in January, 1932, he returned about a year and a half later, and remained there from that time until the present. Under these circumstances, it is contended that there was no loss or abandonment of possession, and, consequently, no eviction for which an action would lie for breach of covenant for quiet enjoyment. Without reviewing the authorities on this subject, or considering such questions as partial eviction, we are of the opinion that the judgment in this case should be sustained on the proof of breach of covenant, though not on the basis of breach of covenant for quiet enjoyment, in the strict sense in which that covenant is usually construed.

A covenant is nothing more than an agreement to do or not to do a particular act, and its language must be read in an ordinary or popular sense. Elterich v. Leicht Real Estate Co., 130 Va. 224, 107 S.E. 735, 18 A.L.R. 441. It is to be construed, if possible, to effectuate the intent of the parties. A covenant for quiet enjoyment is an assurance against the effect of a defective title and of any resultant disturbance. It goes to the possession; Cassada v. Stabel, 98 App.Div. 600, 90 N.Y.S. 533; Berger v. Weinstein, 63 Pa. Super. 153; Kane v. Mink, 64 Iowa 84, 19 N.W. 852, 853; and is referred to as "a covenant for possession." Price v. Deal, 90 N.C. 290, 294. In Wetzel v. Richcreek, supra, it appears, according to the Ohio courts, that a covenant for quiet enjoyment is similar to a covenant of seisin, and that neither of such covenants is broken so as to give the covenantee a right of action, until there has been an eviction. In like manner, a cove-

nant of warranty and a covenant for quiet enjoyment are usually regarded as substantially equivalent. Biwer v. Martin, 294 Ill. 488, 128 N.E. 518. But such covenants, concerned with title and possession, are not generally construed as having to do with the manner in which premises are used, or disturbances other than those of possession. While there appears to be a conflict between courts of Ohio and those of various other states, on the proposition of whether an eviction is necessary to constitute a breach of covenant for quiet enjoyment—numerous jurisdictions holding that a disturbance of the covenantee's use of the property constitutes such a breach—nevertheless, it can be said that, whether or not disturbance in the use of the property is included within a covenant for quiet enjoyment, parties may covenant as to the use of the leased property. Thus, a party can covenant that he will not cause noxious gases and fumes to disturb and nauseate a tenant in some particular use of the property; and such a covenant would not be merely a covenant for quiet enjoyment.

■ In the case before us, the lease provided as follows:

"And said Lessors for themselves and for their heirs, executors, administrators and assigns, Covenant and Agree with the said lessee, his executors and administrators, that said lessee paying the rents and observing and keeping the covenants of this lease, on his part to be kept, shall lawfully, peaceably and quietly hold, occupy and enjoy said premises, during said term, without any let, hindrance, ejection or molestation by said lessors, or their heirs, or any person or persons lawfully claiming under them.

"Said lessee shall use said premises for a camp for himself, associates and guests and has the right to remove all building and other fixtures he may now or cause to be erected on said grounds, during said tenancy; also the right to rent or assign said Camp or any part thereof under the covenants of this lease, but said lessee for himself, his executors or assigns agrees to place the ground back to its original condition after removal of his buildings."

Thus, the lessor covenanted that appellee should use the premises for a camp for himself, associates, and guests, with the right to rent any part of the camp to others, and that he should enjoy the premises without any molestation by the lessors or any person claiming under them. To molest means to interfere with, so as to injure or disturb; molestation is defined as a willful injury inflicted upon one by interference with the user of rights as to person or property. Webster's New International Dictionary, Second Edition. There was substantial evidence of odors, fumes, and gases emitted from appellant's refinery, continuously and in volume, as well as evidence that losses to appellee thereby ensued, as a result of persons leaving the premises which he had rented to them for camp and recreational purposes, and refusing to rent thereafter. Assuredly, this was substantial evidence of molestation of appellee in his use of the premises as a camp. In view of the fact that appellee's lessors covenanted for quiet possession and against molestation of appellee in his enjoyment of the premises, at the same time limiting the use of them to recreational purposes, it is apparent that the parties intended that the lessor would so use his property as not to destroy the use of the premises by the appellee for the only purposes for which they were permitted to be occupied; and, in order to effectuate such intention, we so construe the language of the covenant. Giving the language, above referred to, the ordinary, usual, and normal construction, it is clear that the jury had a right to conclude that the covenant was broken by appellant, causing the resultant damages. While, in the strict sense of the term, the operation of the refinery might not have resulted in a breach of covenant for quiet enjoyment, it could well have been a breach of covenant that appellant would not molest appellee by interfering with his use of the property for recreational purposes; and, on this ground, the verdict of the jury and the judgment entered thereon, should be sustained.

Appellant contends that the trial court erred in entering judgment in favor of appellee, in spite of the failure of the jury to answer certain interrogatories, which were submitted. In his petition, appellee claimed damages of $8,000 for loss of rentals from January, 1934, to August, 1938, because of appellant's operation of its refinery, resulting in the escape of noxious, foul and nauseating odors and fumes upon the leased premises, and the continuous noises, which destroyed the use of the premises as a camp. He also claimed as damages the sum of $12,400 for loss and destruction of his cottages and other prop-

erty, resulting from the flood waters, which he claimed were diverted against his buildings by the levees constructed by appellant.

The jury answered the following interrogatory in the negative, as indicated:

"Did the defendant, The Gulf Refining Company, as landlord, give to the plaintiff, quiet and peaceful enjoyment of his premises from January, 1934, to August, 1938, without hindrance or molestation as those terms have been defined to you?

Answer: No."

The following interrogatories were submitted by the court, which the jury, after due deliberation, was unable to answer with unanimity:

"In the event that you find that plaintiff has been damaged by the emission of smoke, or odors, or gases, or smudge, or noises from the refinery of defendant, The Gulf Refining Company, and that The Gulf Refining Company is liable in damages to plaintiff therefor, state the amount of such damage.

Did the defendant, The Gulf Refining Company, erect the levees with knowledge that flood waters would be likely diverted from the area occupied by its plant and caused to go between the said plant and the River?

Could a man of ordinary skill and knowledge have reasonably foreseen that the construction of the levees in question in this case would cause damage to the property of the plaintiff?

Would plaintiff's cottages have been destroyed by the flood of 1937 even if the levees in question had not been there at that time?

Were plaintiff's cottages destroyed by an 'act of God' as that term has been defined to you?

In the event you find that defendant, The Gulf Refining Company, is liable to plaintiff for the value of those of his cottages which were destroyed by the 1937 flood, state the reasonable value of those cottages immediately prior to that flood."

The trial court received the general verdict and entered judgment thereon. It is obvious that the jury based its verdict on loss of rentals resulting from the fumes, odors, and noises attendant upon the operation of appellant's refinery for the period between January, 1934, and August, 1938. It expressly found that the covenant against molesting appellee in the use of the prem-

ises had been broken. Appellee's claim for rentals was $8,000. The jury allowed $7,908. The jury's answer to the special interrogatory was consistent with its general verdict. It was therefore unnecessary to answer the special interrogatory asking what damages were allowed on the issue of the smoke, fumes, odors, and noise. The only breach of covenant claimed between 1934 and 1938 was that appellant would not molest appellee in his use of the premises. The only way in which this covenant was claimed to have been broken during that period was by appellant's conduct with reference to the fumes, odors, and noise. The only damages claimed for such breach were for losses of rentals during that period. The damages found in the general verdict, based on the answer to the special interrogatory, were for loss of rentals resulting from the smoke, fumes, odor, and noise. These conclusions are inescapable. All of the other interrogatories, which were not answered by the jury, were concerned with damage resulting from the diversion of flood waters. It is clear that, while the jury agreed on the damages caused by the fumes, smoke, and noise, it could not agree on the question of whether appellee was further damaged by appellant's conduct with reference to the flood waters. Obviously, appellee recovered nothing on that issue; but he makes no complaint because of the unanswered interrogatories. His counsel moved for a judgment on the verdict, and submits that this action amounted to a waiver of any right on the part of appellee to recover for the destruction of property resulting from diversion of flood waters. We are unable to see how appellant is injured by failure of the jury to find on this issue. If the jury had answered all of the other interrogatories adversely to appellee, he would still be entitled to a verdict for loss of rentals, in view of the one interrogatory which the jury did answer; and the general verdict was consistent with such answer.

 Special verdicts and interrogatories are authorized by Rule 49 (a), (b), of the Federal Rules of Civil Procedure, and federal courts are governed by such rules of practice and procedure, rather than those of the State court. Moyer v. Aetna Life Insurance Co., 3 Cir., 126 F.2d 141; Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581. Rule 49 (b) of the Rules of Civil Procedure provides that when the general verdict and answers are harmoni-

ous, the court shall direct the entry of the appropriate judgment upon the verdict and answers. The failure to answer interrogatories is not fatal where the general verdict can be supported on other facts, or where answers to such questions, favorable to the party against whom judgment is rendered, would not necessarily render the judgment erroneous. O'Connell v. United Railroads of San Francisco, 19 Cal.App. 36, 124 P. 1022. Under a statute, providing that where a special finding of fact is inconsistent with the general verdict, the former controls, and the court must give judgment accordingly, if a finding in a defendant's favor on special interrogatories would not be inconsistent with a general verdict for a plaintiff, a failure to find *at all* on such interrogatories, can not control such general verdict; Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65; and where several grounds of recovery are alleged, and an interrogatory goes only to one, the general verdict will stand, notwithstanding a failure to agree on an answer to the interrogatory. Russell v. Oregon R. & Nav. Co., 54 Or. 128, 102 P. 619. The jury in the instant case, having found in appellee's favor on the question of loss of rentals, as evidenced by its answer to the interrogatory, relating to breach of covenant, its verdict must be sustained. There is no claim made that the damages awarded were excessive, on the issue of smoke and fumes. Its failure to answer the interrogatories relating to the loss and destruction of property from flood waters is not ground for setting aside the verdict, in view of appellee's motion for judgment thereon. By such action, appellee waived his right to recover such additional damages, and accepted the judgment as an adjudication of all of the claims included in his petition. No disadvantage or prejudice to appellant resulted therefrom. There was no error in entering judgment on the verdict.

Appellant claims that the trial court erred in excluding certain pleadings and proof of judgment in another case between the same parties, contending that such evidence was complete proof of a bar to the present action. The prior suit brought by appellee against appellant herein, was based upon a claim for damages up to January, 1934, resulting from appellant's operation of its refinery, whereby fumes, smoke, and stench were alleged to have been emitted onto the premises leased by appellee. The theory on which that case was tried by the court and both parties, was that it was an action in tort for damages resulting from a nuisance. Appellee had judgment from which an appeal was taken by the Gulf Refining Company and, thereafter, dismissed on motion of its counsel Gulf Refining Co. v. Fetschan, 6 Cir., 92 F.2d 1004. On trial of the present case, appellant sought to introduce the pleadings and judgment in the so-called nuisance case, in proof of the claim that such pleadings and judgment were a bar to an action for damages in the present controversy. The basis of this contention is that one who is damaged by a permanent nuisance, can not split his actions for damages, but must recover all, past and future, in one action. To this, the answer of appellee was that the prior action was in tort and the present one, on contract; that the nuisance was not one which must be considered permanent, as it might be abated by appellant or by the court, and that, therefore, appellee has the right to treat it as a temporary wrong, to be compensated for while it continues. Appellee's petition in the prior suit was limited in its claim for damages up to the date of the filing of the petition; and, in that case, the trial court, in instructing the jury, expressly limited plaintiff's right to recover to the same extent. We find no error in the court's exclusion, in the trial of the instant case, of the judgment and pleadings in the "nuisance case."

Other questions raised on appeal are concerned with claimed errors of the trial court in submitting to the jury matters relating to the flood issue. Inasmuch as the jury found no damages on such issue, there was no prejudice resulting to appellant from any instructions in this regard; and discussion of these propositions is unnecessary to a determination of the case.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

PER CURIAM.

We cannot agree with the contention of appellant, in its petition for rehearing, that there was an inconsistency in the verdict of the jury in its failure to answer certain interrogatories.

Appellee Louis Fetschan can be fairly said to have claimed that the appellant had breached the lease in question in two ways: first, that it caused noxious fumes to be

emitted onto appellee's premises; second, that it caused flood waters to be diverted onto such premises. For the damages caused by the fumes, appellee claimed $8,000.00; for the damages caused by the flood waters, he claimed $12,400.00. The jury awarded damages of $7,908.00. It was unable to answer the interrogatories with regard to damages caused by the flood waters.

The fumes damage was claimed as covering the period from January, 1934, to August, 1938. The jury, in its answer to an interrogatory, found that the lease had been breached "from January 1934 to August 1938." The only damage claimed *for this period* was damage from fumes. The flood damage did not occur until January, 1937. In support of the verdict, we are of the opinion that the jury's answer to the interrogatory should be interpreted as a finding that the lease had been breached because of the emission of fumes, during the period commencing January, 1934, and continuing until August, 1938.

But in order to affirm the judgment, it is not required that even such reasonable inferences be drawn from the jury's finding. If it had found in favor of the appellant on all of the unanswered interrogatories, relating to the flood damage, its verdict would still be supported by its answer that the lease had been breached during the above-mentioned four-year period. We do not consider other questions raised to be meritorious, and the petition for rehearing is denied.