[Cite as *JAL Dev. v. LivFitNutrition, L.L.C.*, 2014-Ohio-3830.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JAL DEVELOPMENT, LTD., | : | APPEAL NO. C-130769 |
| | | TRIAL NO. A-1205331 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| LIVFITNUTRITION, LLC, a.k.a. | : | |
| LIVFIT NUTRITION, LLC, | | |
| | : | |
| DAVID W. PERTUSET, | | |
| | : | |
| STEVEN J. MCANDREW, | | |
| | : | |
| and | | |
| | : | |
| AARON M. DOERFLEIN, | | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 5, 2014

*Statman, Harris & Elrich, LLC*, and *William Fecher*, for Plaintiff-Appellee,

*Taliaferro & Enyon, LLC*, and *Ernest A. Enyon, II*, for Defendants-Appellants.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal by a tenant in a dispute involving the lease of space for a fitness center.  At issue is the trial court's decision to award lost rents to the landlord for periods after the tenant had vacated the premises.  The tenant contends that it was forced to abandon the premises because of a leaky roof.  This leaky roof, maintains the tenant, constituted a constructive eviction, and, thereby, relieved it of any obligation to make any further rental payments.

{¶2}    We are not convinced.  A constructive eviction requires that the tenant be compelled to abandon the premises as a result of actions by the landlord.  Here, there is no evidence that the landlord's failure to fix the roof forced the tenant to move out.  To the contrary, the tenant continued to operate its business on the premises during the time that roof was said to be leaking.  It was only after the leaks had been repaired and eviction proceedings had been instituted that the tenant left.  As a result, there was no constructive eviction.  We affirm the judgment of the trial court.

## Blame it on the Rain

{¶3}    LivFitNutrition, LLC, ("LivFit") rented space from JAL Development, LTD, ("JAL") to open a fitness and nutrition center.  JAL agreed to lease the premises "as is" to LivFit for a 15-month term beginning on October 1, 2011.  David Pertuset, Steven McAndrew, and Aaron Doerflein (collectively "guarantors") executed a lease guaranty in which they assumed liability in the event that LivFit defaulted under the lease. The lease required JAL to maintain the exterior of the property, including the roof of the building, while LivFit was responsible for the upkeep of the interior.

{¶4}    In early December, LivFit began having problems with water intrusion from the ceilings and windows when it rained.  LivFit notified JAL each time there was a water issue, and each time JAL sent a repairman to attempt to fix the problem.  Despite

these efforts, the leaks reoccurred on several occasions through March 2012. Some puddles formed, damaging the wooden exercise floor installed by LivFit and rendering portions of the premises unusable at times. In a few instances, LivFit was forced to cancel group fitness classes, and its business started to decline.

{¶5} LivFit did not pay rent for February and March 2012, asserting as a justification the unremedied problems with the roof. The lease contained a clause requiring that rent and other charges be paid when due, "without * * * set off for any reason whatsoever." JAL served LivFit with a notice of default on March 16, and when LivFit still failed to make payments, JAL served a three-day notice to vacate the premises on March 22.

{¶6} Meanwhile, JAL finally repaired the leaks. On March 23, LivFit sent an email to JAL indicating that the repairs had been successful: "We would also like to thank you for the work done on the roof, which after this downpour we had today pretty much seals the deal that its [sic] all taken care of." And another email sent on April 2 confirmed: "FYI: Roof is doing great, had quite a bit of rain lately and all is hoping [sic] up well."

{¶7} Because LivFit continued to be in default of its rental obligations and had not vacated the building, JAL instituted an eviction action on April 3. JAL further sought damages under the lease for LivFit's nonpayment of rent, and for breach of the lease guaranty signed by LivFit's individual backers. On April 30, LivFit notified JAL that it had vacated the premises, after which JAL dismissed its eviction claim. Then on May 5, LivFit made a payment to cover two months' rent and utilities. Thus, LivFit had essentially paid back rent through March.

{¶8} JAL was unable to relet the premises until October 2012. It sought damages for rent, utilities, and late fees for the months of April through September 2012. LivFit filed a counterclaim in which it sought damages under the lease for JAL's

failure to maintain the exterior of the building. Later, in its post-trial brief, LivFit set forth an ancillary argument that the water intrusion amounted to a breach of the covenant of quiet enjoyment and caused LivFit to be constructively evicted from the premises, thereby terminating its obligation to pay rent.

{¶9}    Following a two-day trial, the trial court found that both parties had breached the lease agreement—LivFit for failing to pay rent, and JAL for failing to properly maintain the roof. The court further found that LivFit and the guarantors "chose not to declare the lease terminated based on [JAL's] breach and did not establish they were constructively evicted." The court, therefore, concluded that their only remedy was damages. The court awarded damages to JAL for rent from April through September, late fees, and utility payments. With respect to JAL's failure to maintain the roof, however, the court determined that the only measurable, nonspeculative evidence of damages set forth by LivFit was for an amount of $9.20. That figure represented the portion of unusable square feet of rental space over a four-day period, during which LivFit was forced to cancel its Zumba fitness classes.

{¶10}    LivFit's only argument on appeal is that the trial court erred by awarding JAL lease payments for the months after LivFit had vacated the property. Specifically, LivFit contends that it vacated the property because of the water issues (not the pending eviction proceedings), and that its forced departure constituted a constructive eviction and a breach of the covenant of quiet enjoyment.

## LivFit was not Constructively Evicted

{¶11}    A tenant is constructively evicted from its leasehold when " 'acts of interference by the landlord compel the tenant to leave, and * * * he is thus in effect dispossessed, though not forcibly deprived of possession.' " *Burnside v. Ickes*, 5th Dist. Ashland No. 02-COA-015, 2003-Ohio-19, ¶ 19, quoting *Sciascia v. Riverpark Apts.*, 3 Ohio App.3d 164, 166, 444 N.E.2d 40 (10th Dist.1981), citing *Liberal S. & L. Co. v.*

4

*Frankel Realty Co.*, 137 Ohio St. 489, 499, 30 N.E.2d 1012 (1940). To establish constructive eviction, the tenant must relinquish possession of the property. *Burnside* at ¶ 19. "As long as the tenant remains in possession he cannot successfully claim that he has been constructively evicted." *Id.*; *see Ott v. Marion Plaza*, 3d Dist. Marion No. 9-85-27, 1987 Ohio App. LEXIS 8545, *35 (August 31, 1987). When a tenant is constructively evicted from its leasehold, it is generally relieved of its duty to pay rent for the remainder of the lease term. *See GMS Mgt. Co. v. Datillo*, 8th Dist. Cuyahoga No. 75838, 2000 Ohio App. LEXIS 2626, *29 (June 15, 2000), citing *Liberal S. & L.* at 498.

{¶12} In *Burnside*, repairs being conducted by a landlord caused noxious fumes to permeate the tenant's apartment. The tenant fell ill and was unable to stay in his apartment for two days. The court held that because the tenant did not move out of the apartment until nearly 11 months later, he "never surrendered possession of the subject premises and, therefore, was never constructively evicted." *Burnside* at ¶ 20.

{¶13} In this case, LivFit did not quit the premises until late April. This was well after the leaks had been repaired, and also after eviction proceedings had been instituted. The fact that LivFit remained in possession of the premises throughout the time that water was coming into the building is fatal to its constructive-eviction claim. Because LivFit was not constructively evicted, it was not discharged from its duty to pay rent for the remainder of the lease term.

{¶14} Where a breach of the covenant of quiet enjoyment does not rise to the level of a constructive eviction, the only available remedy is damages. *See, e.g., Cincinnati Ins. Co. v. Evans*, 6th Dist. Wood No. WD-09-012, 2010-Ohio-2622, ¶ 53-54. LivFit has not challenged the trial court's damage award on appeal.

{¶15} LivFit made no attempt to terminate the lease or vacate the premises in response to JAL's breach. Instead, it withheld rent, and in so doing breached the lease.

LivFit's decision to stick it out at the fitness center until after the problem was repaired has rendered it unable to claim that it was constructively evicted. Accordingly, the trial court did not err by ordering LivFit to pay rent for the months after it vacated the premises until the time that a new tenant was found. We, therefore, overrule LivFit's sole assignment of error and affirm the judgment below.

Judgment affirmed.

**DINKELACKER, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.