**CLEVELAND CONCESSION CO., Plaintiff-Appellant, v. CLEVELAND (CITY) et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20845.   Decided August 16, 1948.

**40**

(DOYLE, PJ, HUNSICKER, J, STEVENS, J, of the Ninth Appellate District sitting by designation in the Eight Appellate District.)

Spieth, Spring & Bell, Morton M. Stotter, Cleveland, for plaintiff-appellant.

Lee C. Howley, Director of Law, Robt. J. Selzer, Asst. Dir. of Law, Robt. M. Morgan, Asst. Dir. of Law, Cleveland, for defendants-appellees.

## OPINION

By STEVENS, J.

This case comes to this court as an appeal on questions of law and fact.

The petition seeks the issuance of a permanent injunction against the City of Cleveland and various officers of said city (appellees herein), enjoining them from cancelling or rescinding the concession contract of plaintiff (appellant), under which plaintiff was granted the exclusive right to sell refreshments and merchandise at the Cleveland Municipal Stadium for a period of five years from April 6, 1945.

The allegations of the petition as to plaintiff's corporate capacity, that the City of Cleveland is a municipal corporation, and that the various individual defendants act in the official capacities alleged in the petition, are admitted by

defendants, as also are the allegations that plaintiff was duly awarded the concession contract as the highest qualified bidder, and that it has operated thereunder since April 6, 1945.

Paragraph 8 of plaintiff's petition alleges: "that the defendant Arthur L. Munson, acting for and on behalf of the defendant The City of Cleveland, by registered letter, under date of August 16, 1946, advised the plaintiff of the intention of The City of Cleveland to cancel and rescind said contract above-enumerated as of September 1, 1946, by reason of certain alleged violations of said contract by plaintiff, each of which alleged violations this plaintiff specifically denies; and in paragraph 9 of the petition, the following: "that, by registered letter dated August 18, 1946, delivered to each of the defendants herein other than certain members of the Board of Control of The City of Cleveland, plaintiff denied any violation on its part of the terms of said contract, further denied the right of defendant The City of Cleveland to terminate said contract, and further notified said defendant The City of Cleveland of plaintiff's intention to perform, each and every, the covenants and obligations of said contract for the duration thereof, and to enjoy all the benefits and privileges granted to it thereunder."

These allegations are admitted by the amended answer of defendants.

The petition then alleges that plaintiff has fully performed all of its obligations under said contract, and that it has no adequate remedy at law, because of the speculative and uncertain nature of its damages arising from a breach by defendants.

The answer of the defendants consists of a series of admissions of the truth of certain of the allegations contained in plaintiff's petition, then a series of specific denials of certain averments of the petition, and concludes with a general denial of all allegations, the truth of which has not been admitted.

This case presents only two questions:

A. Was the City of Cleveland, under the facts here present, justified in cancelling its contract with plaintiff?

B. If not, has plaintiff shown, by the required degree of proof, a right to the issuance of an injunction?

Despite the fact that the amended answer of the defendants sets out no claims of default in the performance of the contract by plaintiff, the evidence, and the argument of counsel, indicate that the City's contentions in that connection are as follows:

(1) That plaintiff is required to sell all of the items listed in Schedules A, B, C and D of the contract.

(2) That plaintiff failed to pay the required percentage of gross receipts to the City upon sales made through vendors.

(3) That plaintiff did not pay all the required sales tax, workmen's compensation payments, unemployment insurance, and federal social security assessments, by reason of its failure to include vendors' commissions in its reports.

(4) That the plaintiff sold underweight and inferior quality merchandise, as evidenced by the Crumbacher samples; and because of the discovery by defendants of contaminated seed popcorn, it is claimed the popcorn sold in the Stadium was contaminated and unfit for human consumption.

It is the claim of the City that the alleged breaches by plaintiff in the respects enumerated, justified the City in cancelling the concession contract.

The contract of the parties prepared by defendant City, and under which plaintiff is operating, in Sec. 29 stipulates:

"29. Proposed concession defined: The concession to be granted under the terms of this proposal shall be the exclusive right and privileges of selling in Cleveland Stadium such articles, and such articles only, as are listed in the schedules hereto attached and marked 'Schedules A, B, C, D,' provided further, that this section is subject to the provisions of Section 30 next following."

Section 30 deals with the sale of articles not included in the schedules, and is not in controversy here.

It is conceded that plaintiff did not sell all the articles enumerated in the schedules, but only those articles for which there was a demand, and that such a course of conduct had been followed by the parties since 1938, under previous contracts containing the same or a similar provision to that contained in the instant contract.

It is the rule that contracts of a municipal corporation providing for the exercise of proprietary functions within legal limits, are construed and interpreted by the same rules which govern contracts of private individuals. **Phelps, a taxpayer, v. Logan Natural Gas & Fuel Co., 101 Oh St 144.**

It is a further rule that, where the parties to a contract have placed thereon a practical construction which harmonizes with their understanding of its requirements at the time of execution, a court, in interpreting such contract, will adopt such practical construction of the parties, if legal, and not opposed to public policy.

A further applicable rule is that, where doubt exists as to the proper construction of a contract, which contract was prepared by one of the parties thereto, and on which the other party has acted, the contract will be strictly construed against the party who prepared it.

**Coe v. Suburban Light & Power Co., 32 Oh Ap 158.**

Applying these rules to the provision of the contract under discussion, impels the conclusion that Sec. 29 did not require, but merely authorized and permitted, the sale by plaintiff of all the articles enumerated in Schedules A, B, C and D of the contract.

The second point made by the City deals with the manner of computation of "gross receipts," upon which the City's compensation is determined.

The evidence shows that plaintiff employs vendors who canvas the persons in the stands for the purpose of selling to them various commodities. Those vendors purchase from plaintiff the merchandise sold by them at 10% less than the retail sale price of said merchandise, and retain that 10% differential as their commission for selling the merchandise. The controversy here involves the question of whether the City's compensation should be computed on the retail sales price of said merchandise, or upon the price at which it is sold to said vendors.

Under this contract, and all of its predecessor contracts for the past twelve years, the City's share of gross receipts has always been computed on the basis of the money actually received by plaintiff for said merchandise. The manner of computation was adopted by the City, through its representative Felix J. O'Neil, treasurer of the Stadium, with the approval of the then law director, Alfred Clum, and amounts determined solely by O'Neil and the City inspectors, one of whom staffs each refreshment stand, have been and are being paid by plaintiff; plaintiff has paid under protest, since June 7, 1947, the City's percentage figured on the basis of vendors' retail sales.

Sec. 48 of the contract in part provides: "Gross receipts for the purpose of this contract shall mean the entire receipts from sales under each schedule grouping, not including sales tax."

The parties have placed their interpretation of the meaning of the term "gross receipts" thereon by their conduct over a period of years, and this court is not disposed to disturb the reasonable interpretation of that term adopted by the parties.

Therefore, in this respect, plaintiff has been guilty of no breach of Sec. 48 of the contract.

On the subject of plaintiff's alleged failure to pay required sales tax, workmen's compensation, unemployment insurance and federal social security assessments, because of its failure to include vendors' commissions in the computation of the assessments for those items, it is sufficient to say that neither the State of Ohio, nor the federal government, has interposed claims for alleged shortages in payments of the various items enumerated. That is shown by the evidence, without contradiction. The City of Cleveland has not been called upon to pay any such alleged shortages, nor is it vested by law with authority to enforce such obligations if owing to the state or federal governments.

We find no substance in this claim of the City.

The fourth point of contention relates to the claim that plaintiff sold merchandise, which in quality and weight did not conform to the specifications contained in Schedules A, B, C, and D.

From a consideration of all the evidence bearing upon the subject of the quality of merchandise sold by plaintiff, we are unanimously of the opinion that the evidence overwhelmingly establishes that the merchandise sold by plaintiff in the Stadium was of a quality which equalled or exceeded the requirements of the specifications of the contract.

The other evidence of alleged violations by plaintiff relates to samples of wieners, buns, peanuts and popcorn, purchased at the Stadium by Fred Crumbacher, a temporary employee of the Cleveland Health Department, between July 24, 1946, and September 9, 1946, the aggregate of said purchases being $14.45.

The evidence of plaintiff establishes that it ordered and received from its purveyors, merchandise which conformed in weight to the specifications of the contract.

The evidence of the City, predicated upon the $14.45 worth of samples allegedly purchased by Crumbacher, and some other slight evidence, indicates that the samples purchased did not conform to the contract specifications. In this connection, it is interesting to note that, during the life of plaintiff's contract (April 6, 1945 to August 16, 1946), sales in an amount exceeding a half million dollars were made by plaintiff.

The City's evidence was not primary evidence, but secondary, and the samples allegedly purchased by Crumbacher were not produced, nor was any explanation of the failure to produce given by the City.

Then, too, the evidence shows that the samples were not analyzed by the City in many cases until several days after

they were purchased, and such analysis therefore could not accurately determine the weight of many of the samples when purchased, due to shrinkage.

The serious question of law presented by this situation is whether any of this secondary evidence offered by the City is properly admissible, in the absence of an explanation by the City of the reasons for its failure to produce the samples, after demand duly made by plaintiff therefor.

These samples of buns, wieners, peanuts and popcorn, were procured by employees of the City of Cleveland, delivered by them to employees of the health department of said city for analysis, and, while susceptible of preservation, and production at the time of trial, they were not produced, nor was their nonproduction explained.

The least rigorous rule which may be applied under such circumstances is that announced in 31 C. J. S., Evidence Sec. 156 b, as follows:

"The unexplained failure or refusal of a party to judicial proceedings to produce relevant and competent documentary evidence or an article which would tend to throw light on the issues authorizes, under certain circumstances, an inference or a presumption unfavorable to such party.

"Possession or control of such evidence by the party against whom the inference or presumption is sought to be invoked, is necessary * * *.

"The unfavorable inference resulting from the nonproduction of * * * real evidence is especially applicable where the party withholding the evidence has had notice or has been ordered to produce it."

See also:

3 Jones Commentaries on Evidence (Second Ed.), Sec. 1421.

Without determining that the secondary evidence produced by the City was inadmissible, in the absence of an explanation of its failure to produce the primary or real evidence, we are of the opinion that the circumstances here present do give rise to an unfavorable inference against the City because of its failure to produce or to explain the nonproduction of, the samples, after demand made by plaintiff therefor.

It is claimed by plaintiff that the letter of the City under date of August 16, 1946, which attempted on August 16, 1946, to cancel plaintiff's concession contract as of September 1, 1946, as a matter of law accomplished no cancellation, because it waived alleged breaches occurring prior to August 16, 1946, by continuing the contract in force until September 1, 1946.

The law seems to be clear that one who attempts to cancel a contract for prior alleged breaches, and who postpones the cancellation date to a later time than the notice of cancellation, thereby waives the alleged breaches, and elects to continue the contract in force; he cannot under such circumstances thereafter successfully urge cancellation of the contract because of breaches occurring prior to the date of the notice of cancellation.

3 Williston on Contracts (Revised Ed.), Sec. 687.

On August 30, 1946, the City sent to plaintiff another letter of cancellation, wherein it notified plaintiff of the cancellation of plaintiff's contract as of that date, for failure "to comply with the terms thereof."

However, between August 16, 1946, and August 30, 1946, the transcript discloses no substantial evidence of any breach by plaintiff, which justified cancellation of the contract by the City.

This conclusion is sufficient to dispose of the defendant's claims of breaches by the plaintiff, but we prefer to rest our decision of this case upon all of the evidence as it appears from the record.

The whole evidence in this case, augmented by the inferences properly deducible therefrom, is such as, in our opinion, requires the conclusion that in none of the respects claimed by the City has the plaintiff been guilty of any breach justifying cancellation of its contract by the City.

We further hold that, because of the many uncertain elements which would necessarily enter into a determination of plaintiff's damages resultant upon a breach of its contract by the City, plaintiff does not have a full, adequate and complete remedy at law. Hence, it may properly avail itself of the equitable remedy of injunction.

We are of the opinion that plaintiff has shown, by the required quantum of proof, a right to the issuance of an injunction.

A decree may be prepared granting to plaintiff a permanent injunction restraining defendants from cancelling plaintiff's concession contract No. 3321 for the Cleveland Municipal Stadium because of alleged breaches occurring on or prior to August 30, 1946; all at defendants' costs.

Exceptions to defendants.

DOYLE, PJ, and HUNSICKER, J, concur.