30 F.3d 133
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda K. LONGO, Plaintiff-Appellee, Cross-Appellant,
v.
ALUMINUM COLOR INDUSTRIES, INC., Trude Spinosa, and John
Zepernick, Defendants-Appellants, Cross-Appellees.
 Nos. 93-3320, 93-3366.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; WOODS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This appeal is the result of the decision by the defendant Aluminum Color Industries ("ACI"), to fire a long-time employee, Linda Longo. Longo sued the company claiming, inter alia, that ACI was estopped from firing her because the president of ACI promised her that she would not be fired. Longo also alleged that the president of ACI and another employee defamed her. The district court granted summary judgment to the defendants on the defamation claim. The promissory estoppel claim, however, was tried to a jury. By special interrogatory, the jury found that ACI was not estopped from firing Longo. Longo made a motion for a new trial, which the district court granted.
 
 
 2
 ACI now appeals from the district court's order granting Longo a new trial. Longo cross-appeals the district court's grant of summary judgment to ACI on her defamation claim. We hold that the district court erred in granting Longo's motion for a new trial and thus reverse that decision. We affirm the court's grant of summary judgment to the defendants on the defamation claim.
 
 
 3
 * Linda Longo began working for ACI in 1984 as a personnel representative. In 1986, the president and CEO of ACI, Trude Spinosa, promoted Longo to Director of Human Resources. Longo contends that Spinosa repeatedly assured her that she had a job with ACI as long as Spinosa was in control of the company. Even though Spinosa and Longo were on good terms, Longo had a terrible working relationship with the vice president of operations, Jack Huey. Although Huey was not Longo's supervisor, he complained to Spinosa about Longo's performance.
 
 
 4
 While Longo was on vacation in August 1991, she received a letter from Spinosa informing her that she had been terminated for cause. According to Spinosa, Longo had approved a $1.50 an hour pay increase for an employee, despite Spinosa's order that the increase be limited to $1.00 an hour. Longo alleges that after she was fired, Spinosa and John Zepernick, another ACI employee, defamed her. Longo alleges that Spinosa told other ACI employees that Longo had taken kickbacks for approving overtime and pay raises. According to Longo, Zepernick defamed Longo when he allegedly told other ACI employees that she had been fired for doing "illegal things."
 
 
 5
 Longo sued ACI, alleging that she was terminated because of her sex and age in violation of federal and state laws. She also claimed she was fired in retaliation for her efforts to enforce OSHA and EPA standards. Longo also asserted a cause of action for breach of an implied employment contract, based on promissory estoppel. Finally, Longo alleged that Spinosa and Zepernick defamed her.
 
 
 6
 ACI moved for summary judgment on all the claims. The district court denied summary judgment on the sex discrimination claim and the promissory estoppel claim. However, the court granted summary judgment to the defendants on the defamation, sexual harassment, and age discrimination claims.
 
 
 7
 Longo's remaining claims were tried in February 1993. A jury heard the promissory estoppel claim and the district court heard the sex discrimination claim. The jury rendered its decision by way of special interrogatories. Interrogatory No. 1 read, in part, as follows:
 
 
 8
 Has the plaintiff, Linda K. Longo, proved by a preponderance of evidence:
 
 
 9
 IF YOU ANSWER "NO" TO ANY OF THE SUB-PARTS BELOW, STOP AND COMPLETE VERDICT FORM "A."[1]
 
 
 10
 (a) That the defendant, by its president Trude Spinosa, promised the plaintiff that she would have a job with defendant so long as Trude Spinosa was the owner of the defendant company?
 
 
 11
 _____ (Yes or No)
 
 
 12
 If you answered "Yes", complete the next sub-part.
 
 
 13
 (b) That the plaintiff reasonably relied on that promise?
 
 
 14
 _____ (Yes or No)
 
 
 15
 If you answered "Yes", complete the next sub-part.
 
 
 16
 (c) That the defendant broke its promise to the plaintiff?
 
 
 17
 _____ (Yes or No)
 
 
 18
 If you answered "Yes", complete the next sub-part.
 
 
 19
 (d) That the plaintiff was injured by relying on the defendant's promise?
 
 
 20
 _____ (Yes or No)
 
 
 21
 Although the jury found that Spinosa had made the promise to Longo and that Longo reasonably relied on the promise, the jury concluded in sub-part (c) that ACI had not broken its promise. Consequently, the jury found in favor of ACI. Since the jury rendered a verdict on this issue, it did not answer the two special interrogatories concerning ACI's defenses to Longo's action. The district court entered judgment in accordance with the jury verdict. The court also found in favor of ACI on Longo's sex discrimination claim.
 
 
 22
 Longo filed a timely motion for a new trial on the promissory estoppel claim. The district court granted her motion, finding that if Spinosa made the promise, as the jury found, then Longo's termination was a breach of that promise. The court found that the jury's answer to sub-part (c) of the special interrogatory was inconsistent with its answer to sub-part (a). After granting a new trial, the district court noted that the district was short five of its allocated 12 judges and that it was suffering "from a judicial emergency of substantial magnitude." The court then dismissed without prejudice the promissory estoppel claim as a pendent state claim. ACI and Longo then filed their notices of appeal.
 
 II
 
 23
 ACI appeals the district court's decision to grant Longo a new trial on the promissory estoppel claim. This court reviews a grant of a motion for a new trial under an abuse of discretion standard. Tobin v. Astra Pharmaceutical Prod., Inc., 993 F.2d 528, 542 (6th Cir.), cert. denied, 114 S.Ct. 304 (1993). In cases involving a general verdict accompanied by interrogatories, the district court must consider whether the answers to the interrogatories are consistent with the verdict. Fed.R.Civ.P. 49(b). "When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered ... in accordance with the answers, notwithstanding the general verdict." Fed.R.Civ.P. 49(b). "Nevertheless, it is incumbent upon a trial court, as well as an appellate court, 'to reconcile the answers if possible under any view of the evidence in the case.' " Waggoner v. Mosti, 792 F.2d 595, 597 (6th Cir.1986) (quoting Sylvestri v. Warner & Swasey Co., 398 F.2d 598, 603 (2d Cir.1963)). "[F]ederal law favors upholding the verdict if there exists some legal basis, supported by the evidence, upon which the verdict could be based." Jewell v. Holzer Hosp. Foundation, Inc., 899 F.2d 1507, 1510 (6th Cir.1990).
 
 
 24
 The consistency of the answered interrogatories and the verdict may be assessed by comparing the questions with Ohio's law regarding promissory estoppel. Promissory estoppel is defined as follows:
 
 
 25
 the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
 
 
 26
 The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.
 
 
 27
 Mers v. Dispatch Printing Co., 483 N.E.2d 150, 155 (Ohio 1985). The focus is on what the employer should reasonably expect the employee to believe the promise means, rather than on what the employer subjectively intended the promise to mean. Id. at 154.
 
 
 28
 In this case, the district court granted Longo's motion for a new trial because it believed that the jury's verdict was inconsistent with the answers to the interrogatory. The court found that an affirmative response to sub-part (a) necessarily required an affirmative response to sub-part (c). According to the district court, the jury could not reasonably have found that Spinosa promised Longo she would work at ACI as long as Spinosa was president, that Longo reasonably relied on that promise, yet find that Longo's dismissal was not a breach of Spinosa's promise. Implicit in the district court's reasoning is the assumption that once Spinosa made the promise, Longo could not be terminated for any cause, including a just cause. However, both the jury instructions and the form of the interrogatory assume that sub-part (a), a finding that the promise was made, does not always imply that sub-part (c), a finding that the promise was broken, must be answered in the affirmative. The district court's reconsideration of the propriety of including sub-part (c) in the interrogatory cannot overcome the fact that Longo did not object to the form of the interrogatory or to the form of the jury instructions.
 
 
 29
 Moreover, the jury's negative response to sub-part (c) is consistent with Longo's and Spinosa's testimony as to what Spinosa promised. At trial, Spinosa testified that she told Longo that she was to give a certain employee a $1.00 raise, but that Longo gave him a $1.50 raise instead. Spinosa also stated that she knew that she could not fire Longo except for just cause, but that she believed that Longo's action amounted to insubordination, which was just cause to fire her.
 
 
 30
 Longo also understood that the promise was not absolutely unconditional. ACI's counsel asked Longo if she understood that her employment depended upon her "performing in a competent and professional manner." Longo testified as follows:
 
 
 31
 A. You asked me that in my deposition.[2] I mean, I think that anybody who has worked, for any period of time, believes they have to do a good job.
 
 
 32
 Q. And you understood that if you didn't do a good job, if you didn't do what you were supposed to do, you would be terminated?
 
 
 33
 A. No, I didn't really understand that. No. It just wasn't an issue. I knew--she kept telling me I was doing a good job. So I knew, as long as I kept doing what I was doing, I would have a job.
 
 
 34
 Q. Did you think that if you started screwing up, you wouldn't have employment?
 
 
 35
 A. I'm sure that there would have been at least some grounds for some discipline.
 
 
 36
 Q. Or possibly discharge, depending on the severity?
 
 
 37
 A. Possibly.
 
 
 38
 Spinosa's testimony coupled with Longo's admission that she could be fired for just cause is evidence sufficient to support the jury's verdict. Since Longo admits that she could be fired for just cause, the jury could reasonably have found that there was no breach when Spinosa fired Longo for disobeying her orders. Using this interpretation, the subparts of the interrogatory can be reconciled and the verdict is easily reconciled to the answers in the interrogatories. Since federal law favors upholding the verdict, and since a reasonable jury could have found that Spinosa's promise of continued employment was conditioned on Longo's performance, we hold that the district court abused its discretion in granting Longo's motion for a new trial.
 
 III
 
 39
 Longo cross-appeals the district court's grant of summary judgment for ACI on her defamation claim. This court reviews de novo an order granting summary judgment. Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 113 S.Ct. 466 (1992). In Ohio, a plaintiff in a defamation action must establish that (1) the defendant published a defamatory statement to a third party; (2) the hearer understood the defamatory meaning of the statement; and (3) the statement is actionable. Hahn v. Kotten, 331 N.E.2d 713, 718 (Ohio 1975).
 
 
 40
 A defendant, however, may avoid liability if the communication is qualifiedly privileged. "It is well established in Ohio that communications between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege." Gray v. Allison Div., General Motors Corp., 370 N.E.2d 747, 750 (Ohio Ct.App.1977). If, however, the act was done with actual malice, the speaker loses his qualified privilege. Ibid. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Jacobs v. Frank, 573 N.E.2d 609, 614 (Ohio 1991). A plaintiff must establish malice or reckless disregard by clear and convincing evidence. Id. at syllabus p 2. In the context of a motion for summary judgment, the evidence presented by the non-movant must be of sufficient "caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 2513 (1986); cf. Perez v. Scripps-Howard Broadcasting Co., 520 N.E.2d 198, 204 (Ohio 1988).
 
 
 41
 Longo claims that Spinosa and Zepernick told other employees that she had taken kickbacks and had authorized overtime. Spinosa, however, indicated in her deposition that she did not make any defamatory statements about Longo. Longo's witness, Gilles Willard, could not recall if Spinosa used the word "kickback" when he discussed Longo's firing with Spinosa, but he believed that the "implication was pretty clear." Willard also stated that "someone" told him that Zepernick told him that Longo had been accused of "illegal activities."
 
 
 42
 Assuming that this evidence establishes that Spinosa and Zepernick made defamatory comments, Longo has still failed to produce clear and convincing evidence that the statements were not qualifiedly privileged. In her brief, she argues that Spinosa and Zepernick had a duty to investigate the accusations before disseminating the information. Longo relies on Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc., 611 N.E.2d 955 (Ohio Ct.App.1992), to support her argument.
 
 
 43
 In Akron-Canton Waste Oil, an oil company hauled away waste oil from a K-Mart store. The next day, the K-Mart loss prevention manager learned that the oil company was not K-Mart's usual hauler, and after a brief investigation filed a theft report with the police. The manager indicated in the police report and her internal investigation report that the oil company took the oil without permission. A rival oil company obtained copies of the police report from K-Mart and distributed the documents to potential customers as part of its sales pitch. Id. at 958-59.
 
 
 44
 The defamed oil company sued its rival and K-Mart. The jury awarded damages to the plaintiff, and K-Mart appealed. The court of appeals upheld the verdict on the basis, inter alia, that K-Mart should have known that the oil company received permission from the assistant manager of the automotive center. The court also believed that the loss prevention manager's failure to question any employee who had dealt directly with the oil company was reckless. Id. at 963. The court held that this evidence was enough to establish "reckless disregard" for the truth and that K-Mart thus lost its qualified privilege. Id. at 964.
 
 
 45
 Akron-Canton Waste Oil, however, is distinguishable from this case. In that case, the plaintiff provided solid evidence--in the form of the receipt signed by an assistant manager--that the defamatory statements were false. Here, Longo has provided only slight evidence that Spinosa or Zepernick knew that the statements were false or that they acted with reckless disregard as to the truth or falsity of the statements. Longo argues that her good work record was enough to create a duty to investigate the accusations of "illegal activities." She also argues that Spinosa and Zepernick should have been on notice that the statements were false because Jack Huey, Longo's personal nemesis, was the source of the information. While this evidence raises a slight inference of malice, it falls short of the standard for demonstrating malice or reckless disregard, namely that there be clear and convincing evidence of malice. Consequently, the district court was correct in finding that ACI was entitled to summary judgment on this issue.
 
 
 46
 In conclusion, we REVERSE the district court's order granting Longo a new trial, and we AFFIRM the grant of summary judgment on the defamation claim in favor of the defendants.
 
 
 
 *
 The Honorable George E. Woods, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Verdict Form A was a finding in favor of ACI
 
 
 [2]
 In her deposition, Longo testified that it was "absolutely" her understanding that she was required to perform in a professional and competent manner. Furthermore, in her complaint, Longo stated that she "was assured that her employment would last as long as she performed favorably."