**GNB BATTERY TECHNOLOGIES, INC., Plaintiff,**

v.

**EXIDE CORPORATION and General Battery Corporation, Defendants.**

**Civ. A. No. 88–407–RRM.**

United States District Court, D. Delaware.

Feb. 10, 1995.

Robert H. Richards, III, Richards, Layton & Finger, Wilmington, DE, Gordon R. Coons, Charles H. Mottier, Pamela J. Ruschau, Leydig, Voit & Mayers, Chicago, IL, for plaintiff.

Paul E. Crawford, James D. Heisman, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Frank J. Benasutti, Benasutti, P.C., Wynnewood, PA, for defendants.

## OPINION

McKELVIE, District Judge.

In this patent case, the defendants have moved for a new trial under Federal Rule of Civil Procedure 49(b). The facts of this case are more fully set forth in the court's Opinion of February 10, 1995, 876 F.Supp. 582, on defendants' motion for judgment as a matter of law or, in the alternative, a new trial. The parties have briefed the issue and this is the court's decision on defendants' motion.

*FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On July 18, 1988, GNB Battery Technologies, Inc. ("GNB"), owner of United States Patents 4,645,725 ("the '725 patent") and 4,701,386 ("the '386 patent") filed suit against the defendants claiming infringement of both patents. The parties stipulated to trying the liability issues first and then upon a verdict in favor of the plaintiff and against the defendant, immediately trying the damage issues to the same jury. Trial of the liability issues commenced on November 12, 1993. On November 23, 1993, the parties agreed to try the damage issues to the court at a later time.

Before trial on the liability issues, the court invited the parties to submit a joint set of written interrogatories to the jury. The parties, however, were unable to come to an agreement on a single list of questions for the jury to answer. The court then decided

to submit a set of interrogatories from each party to the jury and allow counsel to advocate to the jury how it should answer their respective questions.

In addition to separate sets of written interrogatories, the court submitted a verdict sheet to the jury. On November 23, 1993, the court charged the jury, the parties delivered closing arguments and the jury began deliberations. On November 29, 1993, the jury reported that they were unable to reach agreement on the validity of the claims of the '725 patent and on defendants' interrogatories 5, 7, 9, and 12. After conferring with counsel, the court then accepted the jury's verdict.

On the verdict form, the jury reported that GNB had proven by a preponderance of the evidence that defendants infringed claims 1 through 10 of the '386 patent and claims 1–9, 12, and 13 of the '725 patent. The jury also reported that defendants had not proven by clear and convincing evidence that claims 1–10 of the '386 patent are invalid. However, the jury was unable to reach a unanimous verdict on the invalidity of the claims of the '725 patent. A copy of the verdict sheet is at Docket Item ("D.I.") 231.

The jury answered all of the interrogatories posed by GNB. A copy of GNB's interrogatories is at D.I. 233. The jury answered all of the interrogatories posed by the defendants except numbers 5, 7, 9 and 12. A copy of the defendants' interrogatories is at D.I. 232. In addition, a copy of the verdict sheet and the parties' interrogatory sheets are attached to this Order.

On December 9, 1993, defendants filed a motion for judgment as a matter of law or a new trial under Federal Rules of Civil Procedure 49(b), 50(b) and 59. D.I. 235. On that same day, defendants filed a motion for a Declaration of Mistrial or in the alternative to Stay the Entry of Judgment Pending Disposition of Certain Post Trial Motions. D.I. 236.

On December 22, 1993, the court declared a mistrial on plaintiff's claim for damages based on the defendants' infringement of the claims of the '725 patent. D.I. 252. On March 14, 1994, the court denied the defendants' Motion for a Declaration of Mistrial, granted their Motion to Stay the Entry of Judgment Pending Disposition of Certain Post Trial Motions, and ordered the parties to proceed as if the motions were denied. D.I. 271. In April of 1994, the damage issues were tried to the court. On February 10, 1995, in an Opinion, the court denied defendants' motion for judgment as a matter of law or a new trial under Rules 50(b) and 59 on the issues involving liability under the '386 patent.

In their briefing on this motion, defendants contend, in essence, that, as demonstrated by its answers to the interrogatories, the jury misunderstood the meaning of the words "substantially completely embedded" as defined in the '386 patent. Defendants argue that because the jury did not understand this phrase it could not have properly reached a verdict on the issues of validity and infringement of the claims of the '386 patent.

In particular, defendants point to the answers to interrogatories 6 and 7. In interrogatory 6, the jury found that the Halsall patent did not disclose a battery having bushings with side terminals on an angle substantially completely embedded in the cover. However, the jury did not answer interrogatory 7 which asks whether the "Die Hard battery discloses a battery cover having bushings with side terminals on an angle substantially completely imbedded in the cover." Defendants argue that because the Die Hard battery was made in accordance with the Halsall patent the jury's answers should have been the same on both of these questions. Furthermore, defendants argue that the jury ignored admissions by the inventor regarding what this patent and product disclosed, as well as admissions on other prior art.

In response to this alleged inconsistency, plaintiff argues that interrogatory 7 is ambiguous, as it had argued at trial, and is not susceptible to a simple yes or no answer. Plaintiff points to evidence at trial that three batteries were manufactured under the Die Hard name and notes that question 7 does not specifically identify the particular battery the defendants had in mind.

Defendants also contend that the jury's failure to answer interrogatories 5 and 12 is inconsistent with its answer to interrogatory 6. Defendants argue that the jury should have answered interrogatories 5 and 12 in the affirmative based on uncontroverted evidence offered at trial.

Plaintiff responds by arguing that interrogatories 5 and 12 contain ambiguities which could have caused the jury to be unable to reach a unanimous verdict. For example, plaintiff notes that interrogatory 5 asks whether the Japanese Laid–Open publication discloses a dual-terminal battery having bushings substantially completely embedded in the battery cover. Testimony offered at trial suggested that this publication did not disclose a workable dual-terminal battery. Therefore, some jurors could have determined that the publication did not disclose a "dual-terminal battery."

Defendants also contend that the answers to interrogatories 3, 5–9, 10 and 12 and the unanswered verdict with regard to the validity of the '725 patent are inconsistent. Defendants argue that the jury ignored admissions regarding what the prior art showed and misunderstood the meaning of "substantially completely embedded."

Plaintiff responds by arguing that the answers to interrogatories 3 and 10 and interrogatories 5–9 and 12 and the unanswered validity question in the verdict form on the '725 patent are not inconsistent. Plaintiff contends that the defendants are simply rearguing their case on the merits.

## DISCUSSION

### I. *Special Interrogatories and Conflict With the Verdict*

The use of special interrogatories and special verdicts has been championed as a way to mitigate the criticism of the use of juries in resolving civil disputes. *See Skidmore v. Baltimore & Ohio R.R.,* 167 F.2d 54, 56 (2d Cir.), *cert. denied,* 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371 (1948). Together, the tools of special interrogatories and Federal Rule of Civil Procedure 49(b) provide a mechanism for a party to obtain a new trial where interrogatory answers are inconsistent with each other and inconsistent with the verdict.

Despite this attention to special interrogatories, courts have continued to recognize the superiority of the general verdict. *See* 5A James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 49.04 (2d ed. 1994) (citing cases).

■ For example, in addressing an allegation that answers are inconsistent with one another and with the verdict, the Third Circuit requires that a verdict be "molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers." *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 763 (3d Cir.1989). That is, a court "must interpret a jury's findings of fact as consistent whenever possible." *Barnhart v. Dollar Rent A Car Sys., Inc.,* 595 F.2d 914, 919 (3d Cir.1979); *see also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2513, at 530–31 (1971) (collecting cases). Even where the answers to interrogatories and the verdict do conflict, a court should uphold the verdict if there exists a legal basis, supported by the evidence, upon which the verdict could be based. *Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1510–11 (6th Cir.1990) (citing *Arnold v. Panhandle & Santa Fe Ry.,* 353 U.S. 360, 361, 77 S.Ct. 840, 841, 1 L.Ed.2d 889 (1957) (stating that answers do not present a square conflict where they do not exhaust all possible grounds on which verdict could be based)).

■ Even the failure to answer interrogatories is not fatal where the general verdict is supported by other facts or where answers to such questions, favorable to the party against whom judgment is rendered, would not necessarily render the judgment erroneous. *Gulf Refining Co. v. Fetschan,* 130 F.2d 129, 135 (6th Cir.1942); *accord Kissell v. Westinghouse Elec. Corp. Elevator Div.,* 367 F.2d 375, 376 (1st Cir.1966) (refusing to find error in a court's acceptance of a jury's verdict without obtaining answers to all interrogatories). In other words, the failure to answer interrogatories will not invalidate the jury's general verdict where the questions involved could not have controlled the outcome of the case because the jury's verdict could have been based on other issues

in the case or because the unanswered questions were immaterial. *Bree v. Jalbert,* 87 N.J.Super. 452, 209 A.2d 836, 845 (Ct.Law Div.1965) (citing *Gulf Refining,* 130 F.2d at 134–35), *aff'd,* 91 N.J.Super. 38, 219 A.2d 178 (Ct.App.Div.1966); *see also* 9 Wright & Miller, *supra,* at 234.

## II. *Answers to Interrogatories and Verdict Do Not Warrant New Trial*

Defendants have moved for a new trial under Federal Rule of Civil Procedure 49(b). They contend the answers to certain interrogatories are inconsistent with one another and with the verdict and that as such, a new trial should be ordered. Plaintiff argues that the answers are not inconsistent with one another nor with the verdict. For three reasons, the court finds that a new trial is not warranted based on the jury's answers to the special interrogatories and its general verdict.

First, it appears that defendants' interrogatory questions 3, 5, 6, 7, 8, 9, 11, and 12 are ambiguously worded in such a way as to render any responses to those questions neither material nor necessary to the verdict. The other interrogatories, that is those submitted by GNB as well as 10 and 13 submitted by defendants all are in accordance with one another and with the verdict on the '386 patent.

■ Interrogatories 3, 5, 6, 7, 8, 9, 11, and 12 ask whether the jury finds that a particular patent, battery or the prior art "discloses" certain features appearing in the claims of the '386 patent. For example, interrogatory number 3 asks "Do you find that the McGuire patent # 4,424,264 discloses a dual terminal battery having top terminals on the battery center line and side terminals sealed in the side wall of the battery cover?" Defendants argue that such findings are mandated in a verdict on obviousness by the Supreme Court's decision in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

■ Defendants are simply wrong as a matter of law. The test for obviousness focuses on how one skilled in the art would view the prior art at the time of the invention. 35 U.S.C. § 103. Section 103 reads:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Furthermore, patents are directed at those skilled in the art and not at the general public. *W.L. Gore & Assoc. v. Garlock, Inc.,* 721 F.2d 1540, 1556 (Fed.Cir.1983). Thus, the relevant inquiry under the obviousness determination is what a patent discloses to one skilled in the relevant art at the time of the invention of the patent under attack.

Here, the interrogatories do not ask the jury to find how one skilled in the art would have viewed the various prior art at the time of the invention of the '386 and '725 patents. Therefore, the questions appear either immaterial or not necessary to the verdict. *See Diniero v. U.S. Lines Co.,* 288 F.2d 595, 599–600 (2d Cir.), *cert. denied,* 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961) (stating that "a confusing and improperly worded interrogatory cannot fairly be considered a 'material' question, or one the answer which 'is necessary to a verdict'" under Rule 49(b)).

■ Second, even assuming these interrogatories are material, the court finds no inconsistency among the answers to the interrogatories or between the answers and the verdict. Defendants argue that certain answers to interrogatories are inconsistent with the jury's failure to answer other interrogatories. For example, defendants contend that the answer to interrogatory 6 which asks whether "you find that the Halsall patent # 4,444,853 discloses a prior art battery having bushings with side terminals on an angle substantially completely embedded in the cover?" is inconsistent with the failure to answer interrogatory 7 which asks whether "you find that the Die Hard battery discloses a battery cover having bushings with side terminals on an angle substantially completely imbedded in the cover?" Accord-

ing to the defendants these interrogatories pose essentially the same question since the Die Hard batteries were made in accordance with the Halsall patent.

However, the court cannot speculate as to why the jury decided not to answer question 7 or any of the other unanswered questions. It may have been that the jury focused on the factual issue of whether the prior art would have suggested, at the time of the invention of the '386 patent, the combination of elements to one skilled in the relevant art. In addition, question 6 is ambiguous. For example, the jury may have answered interrogatory 6 in the negative because testimony at trial revealed that the Halsall patent shows three different batteries, whereas the interrogatory asks whether the Halsall patent discloses "a battery." Therefore, the court cannot conclude that the answer to an interrogatory is inconsistent with a failure to answer another.

Furthermore, none of the answers to interrogatory questions are inconsistent with the verdict on the '386 patent. The jury answered questions 3, 6, 8, and 11 on whether particular prior art discloses certain features claimed in the '386 patent. In question 10, the jury found that the level of skill in the art was greater than that of a layman. None of these answers is inconsistent with a general verdict finding the claims of the '386 patent not proven invalid or proven infringed. In question 13, the jury found that the '386 patent contains a description in such full, clear, concise, and exact terms as to enable any person skilled in the battery art to determine how much of the bushing shown in Figure 7 of the '386 patent is embedded in the plastic. This answer is entirely consistent with the jury's verdict on the proof of invalidity on the claims of the '386 patent.

■ Third, even were the court to conclude that some of the interrogatory responses were inconsistent, substantial evidence in the record supports the jury's verdict on the issues of infringement and validity of the '386 patent on grounds other than those addressed by defendants' interrogatory questions. See Arnold, 353 U.S. at 361, 77 S.Ct. at 841 (stating that answers do not present a square conflict where they do not exhaust all possible grounds on which verdict could be based); Jewell, 899 F.2d at 1510 ("[F]ederal law favors upholding the verdict if there exists some legal basis, supported by the evidence, upon which the verdict could be based.").

All but two of defendants' interrogatories focus on specific elements shown or depicted in prior patents or batteries. Of the remaining two interrogatories, one asks the jury whether the level of ordinary skill of a battery design engineer in the prior art was greater than that of a layman, which the jury answered affirmatively. The other asks the jury if it found that the '386 patent contains a description in such full, clear, concise, and exact terms as to enable any person skilled in the battery art to determine how much of the bushing shown in Figure 7 is embedded in the plastic. The jury also answered this question in the affirmative.

None of defendants' interrogatories address the central issue in this case which is whether the prior art would have suggested the combination of existing elements in the prior art to one skilled in the art at the time of the invention. See, e.g., SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 886–87 (Fed.Cir.1988) (stating that one attempting to show obviousness cannot "pick and choose among the individual elements of assorted prior art references to recreate the claimed invention" but instead must "show some teaching or suggestion in the references to support their use in the particular claimed combination"); Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1568 (Fed. Cir.1987) (same); In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig., 831 F.Supp. 1354, 1375 (N.D.Ill.1993) (Easterbrook, J. sitting by designation) ("Unless the prior art itself suggests the particular combination, it does not show that the actual invention was obvious or anticipated."). As indicated by this court's decision on defendants' motion for judgment as a matter of law, substantial evidence supports a finding that the prior art did not suggest the combination to one skilled in the art at the time of the invention of the '386 patent. That finding alone is sufficient to support the jury's verdict on the obviousness issues.

Similarly, none of defendants' interrogatories address findings of fact relevant to the infringement inquiry. As this court found in denying judgment as a matter of law, the jury's verdict on infringement of the claims of the '386 patent is supported by overwhelming evidence at trial. In fact, defendants appear to have offered no evidence at trial to suggest that the claims of the '386 patent did not precisely describe their battery. Thus, other evidence in the record supports the jury's verdict.

For this same reason, the court finds that the mere fact that the jury failed to answer certain interrogatories does not warrant the grant of a new trial, as well. *See Gulf Refining*, 130 F.2d at 134–35 ("The failure to answer interrogatories is not fatal where the general verdict can be supported on other facts ....").

*CONCLUSION*

For these reasons, the court will deny defendants motion for a new trial based on alleged inconsistencies in special interrogatories.

ATTACHMENT

231

IN THE UNITED STATES
DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

C.A. No. 88–407–RRM.

GNB INCORPORATED,

Plaintiff,

v.

EXIDE CORPORATION and

GENERAL BATTERY CORPORATION,
Defendants.

VERDICT

We, the jury, unanimously find as follows:

I. *INFRINGEMENT OF THE PATENTS IN SUIT*

A. INFRINGEMENT OF THE '386 PATENT

Has plaintiff GNB proven by a preponderance of the evidence that defendants Exide and General Battery have infringed the following Claims of the *'386* patent? (A "YES" answer to this question is a finding for GNB. A "NO" answer is a finding for Exide and General Battery.)

| | | | |
|---|---|---|---|
| Claim 1 | YES | X | NO |
| Claim 2 | YES | X | NO |
| Claim 3 | YES | X | NO |
| Claim 4 | YES | X | NO |
| Claim 5 | YES | X | NO |
| Claim 6 | YES | X | NO |
| Claim 7 | YES | X | NO |
| Claim 8 | YES | X | NO |
| Claim 9 | YES | X | NO |
| Claim 10 | YES | X | NO |

B. INFRINGEMENT OF THE '725 PATENT

Has plaintiff GNB shown by a preponderance of the evidence that defendant Exide has infringed the following Claims of the *'725* patent? (A "YES" answer to this question is a finding for GNB. A "NO" answer is a finding for Exide.)

| | | | |
|---|---|---|---|
| Claim 1 | YES | X | NO |
| Claim 2 | YES | X | NO |
| Claim 3 | YES | X | NO |
| Claim 4 | YES | X | NO |
| Claim 5 | YES | X | NO |
| Claim 6 | YES | X | NO |
| Claim 7 | YES | X | NO |
| Claim 8 | YES | X | NO |
| Claim 9 | YES | X | NO |
| Claim 12 | YES | X | NO |
| Claim 13 | YES | X | NO |

## II. VALIDITY OF THE PATENTS IN SUIT

### A. VALIDITY OF THE '386 PATENT

Have defendants proven by clear and convincing evidence that the following Claims of the '386 patent are invalid? (A "YES" answer to this question is a finding for Exide and General Battery. A "NO" answer is a finding for GNB.)

| Claim | | YES | NO | |
|---|---|---|---|---|
| Claim 1 | YES | | NO | X |
| Claim 2 | YES | | NO | X |
| Claim 3 | YES | | NO | X |
| Claim 4 | YES | | NO | X |
| Claim 5 | YES | | NO | X |
| Claim 6 | YES | | NO | X |
| Claim 7 | YES | | NO | X |
| Claim 8 | YES | | NO | X |
| Claim 9 | YES | | NO | X |
| Claim 10 | YES | | NO | X |

### B. VALIDITY OF THE '725 PATENT

Have defendants proven by clear and convincing evidence that the following Claims of the '725 patent are invalid? (A "YES" answer to this question is a finding for Exide. A "NO" answer is a finding for GNB.)

| Claim | | YES | NO | |
|---|---|---|---|---|
| Claim 1 | YES | | NO | |
| Claim 2 | YES | | NO | |
| Claim 3 | YES | | NO | |
| Claim 4 | YES | | NO | |
| Claim 5 | YES | | NO | |
| Claim 6 | YES | | NO | |
| Claim 7 | YES | | NO | |
| Claim 8 | YES | | NO | |
| Claim 9 | YES | | NO | |
| Claim 12 | YES | | NO | |
| Claim 13 | YES | | NO | |

DATED: November 30, 1993    FOREPERSON· [Signature]

232

### DEFENDANTS' PROPOSED SPECIAL INTERROGATORIES FOR THE LIABILITY TRIAL

3. Do you find that the McGuire patent #4,424,264 discloses a dual terminal battery having top terminals on the battery center line and side terminals sealed in the side wall of the battery cover?

Yes  X        No _____

5. Do you find that the Japanese Laid Open publication No. 56–175964 shows a dual terminal battery wherein the bushings are substantially completely imbedded in the cover?

Yes _____        No _____

6. Do you find that the Halsall patent # 4,444,853 discloses a prior art battery having bushings with side terminals on an angle substantially completely imbedded in the cover?

Yes _____        No  X

7. Do you find that the Die Hard battery discloses a battery cover having bushings with side terminals on an angle substantially completely imbedded in the cover?

Yes _____        No _____

8. Do you find that the Oxenreider patent # 4,371,591 discloses a bushing with a top terminal at or near the center line of a battery; which bushing is substantially completely imbedded in the cover?

Yes _____        No  X

9. Do you find that the Strough patent #2,052,499 discloses a bushing with a top terminal at or near the center line of a battery; which bushing is substantially completely imbedded in the battery?

Yes _____        No _____

10. Do you find that the level of ordinary skill of a battery design engineer in the prior art was greater than that of a layman?

Yes  X        No _____

11. Do you find that the prior art discloses the use of threaded steel nuts imbedded in the side terminal ends of the bushings of batteries as defendants contend are shown in the General Motors side terminals?

        Yes    X        No      

12. Do you find that the prior art discloses bushings provided with one or more ribs along the surfaces of the bushings; which bushings are substantially completely imbedded in the covers of said batteries?

        Yes       No      

13. Do you find that the '386 patent contains a description in such full, clear, concise, and exact terms as to enable any person skilled in the battery art to determine how much of the bushing shown in Figure 7 is embedded in the plastic?

        Yes    X        No      

### 233
### GNB'S INTERROGATORIES

- **Level of Ordinary Skill in the Art**

1. What was the level of ordinary skill in the art of battery design at the time Kump and Jergl made their invention? Choose one of the following:

         that of a layperson

   X    that of a person with several years of "hands on" experience in the field of battery design and manufacture

         that of an engineer with a college degree or a person with a higher degree in applied sciences

- **Objective Evidence of Nonobviousness**

2. Did the invention of the "one size fits all" battery of the '725 patent meet an unfulfilled need for a dual terminal battery product which addressed and solved the manufacturing and inventory problems caused by the large number of different batteries required by the automotive battery market?

        YES    X    (for Plaintiff)

        NO       (for Defendants)

3. Did the invention of the "one size fits all" battery of the '386 patent meet an unfulfilled need for a dual terminal battery product which addressed and solved the manufacturing and inventory problems caused by the large number of different batteries required by the automotive battery market?

        YES    X    (for Plaintiff)

        NO       (for Defendants)

4. Has the invention of the '725 patent enjoyed commercial success?

        YES    X    (for Plaintiff)

        NO       (for Defendants)

5. Has the invention of the '386 patent enjoyed commercial success?

        YES       (for Plaintiff)

        NO    X    (for Defendants)

6. Do you find that the defendant Exide developed their dual terminal battery with knowledge of the Kump and Jergl invention?

        YES    X    (for Plaintiff)

        NO       (for Defendants)

7. Do you find that the defendant General developed their dual terminal battery with knowledge of the Kump and Jergl invention?

        YES    X    (for Plaintiff)

        NO       (for Defendants)

DATED: November 29, 1993     FOREPERSON: [Signature]
VERDICT.RHR